

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-1-1994

# National Union Fire Ins. Co. v. City Savings, FSB

Precedential or Non-Precedential:

Docket 93-5587

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"National Union Fire Ins. Co. v. City Savings, FSB" (1994). *1994 Decisions.* Paper 67.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/67

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Nos. 93-5587, 93-5595 & 93-5596


NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA; GULF INSURANCE COMPANY,

> National Union Fire Insurance
> Company of Pittsburgh, PA
> Appellant in Nos. 93-5595/5596

> Gulf Insurance Company
> Appellant in No. 93-5587


v.


CITY SAVINGS, F.S.B., In Receivership,
RESOLUTION TRUST CORPORATION, as Receiver


On Appeal from the United States District Court
for the District of New Jersey
(Civ. No. 92-cv-03408)


Argued March 28, 1994

Before:  GREENBERG, COWEN and NYGAARD
Circuit Judges

(Filed July 1, 1994)

S. Gordon Elkins (argued)
Samuel J. Arena, Jr.
Pauline C. Scalvino
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
Philadelphia, PA  19103-7098

Peter I. Broeman
Bigham, Engler, Jones & Houston


1

One Gateway Center, Suite 527
Newark, NJ  07102-5311
          COUNSEL FOR APPELLANT
          NATIONAL UNION FIRE INSURANCE COMPANY
          OF PITTSBURGH, PA

Thomas F. Quinn (argued)
Wilson, Elser, Moskowitz, Edelman & Dicker
One Gateway Center, Suite 1600
Newark, NJ  07102

          COUNSEL FOR APPELLANT
          GULF INSURANCE COMPANY

Gerald A. Liloia (argued)
Robert J. Gilson
Riker, Danzig, Scherer, Hyland
& Perretti
One Speedwell Avenue
Headquarters Plaza
Morristown, NJ  07962-1981

          COUNSEL FOR APPELLEES
          CITY SAVINGS, F.S.B., In Receivership,
          THE RESOLUTION TRUST CORPORATION, As Receiver

**OPINION OF THE COURT**

COWEN, <u>Circuit Judge</u>.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union") and Gulf Insurance Company ("Gulf") filed a declaratory judgment action against City Savings, F.S.B., in Receivership ("City Savings") and the Resolution Trust Corporation, as Receiver ("RTC"). In the declaratory judgment action, National Union and Gulf sought to rescind insurance policies which they had issued and under which City Savings and the RTC were seeking coverage. The RTC filed a

2

motion to dismiss the declaratory judgment action and also filed a counterclaim.  The district court held that under the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"),[0] 12 U.S.C. § 1821(d)(3), (d)(13)(D), it lacked subject matter jurisdiction over National Union and Gulf's declaratory judgment action.  The district court also held that under FIRREA, National Union and Gulf were jurisdictionally barred from raising certain affirmative defenses to the RTC's counterclaim.  For the reasons stated below, we will affirm the district court's holding that under FIRREA the district court lacks subject matter jurisdiction over National Union and Gulf's declaratory judgment action.  However, we will reverse the district court's holding that under FIRREA National Union and Gulf are barred from raising affirmative defenses to the counterclaim.

## I. BACKGROUND

Effective March 22, 1989, National Union and Gulf issued policies of insurance[0] to CityFed Financial Corp. ("CityFed") and its subsidiaries.  The insurance policies provide coverage for losses sustained from, among other things, the dishonest or fraudulent acts of employees of CityFed and its

---

[0]FIRREA, Pub. L. No. 101–73, 103 Stat. 183, (appears in scattered sections of the United States Code).
[0]The parties have also called the insurance polices issued by National Union and Gulf respectively, "Financial Institution Bond No. 362 61 69" and "Excess Financial Institution Bond No. GA 5355981 B".  We will refer to these instruments collectively as "insurance policies."

3

subsidiaries. On October 27, 1989, City Federal Savings Bank ("City Federal"), a subsidiary of CityFed, sent a letter to National Union and Gulf providing notice that City Federal might have suffered a loss covered by the insurance policies as a result of dishonest or fraudulent acts of City Federal employees. On December 7, 1989, City Federal put National Union and Gulf on notice of another potential claim involving the alleged dishonest and/or fraudulent acts of George E. Mikula, an Executive Vice President of City Federal. On January 4, 1990, City Federal placed National Union and Gulf on notice of a third potential claim arising from the alleged dishonest and/or fraudulent acts of Frank W. Allaben, a former Vice President of City Federal and City Federal Mortgage Corporation.

In the interim, by Order dated December 7, 1989, City Federal was declared insolvent by the Director of the Office of Thrift Supervision ("OTS") and ordered closed. By the same Order, the RTC was appointed Receiver of City Federal, succeeding to all rights, titles, powers, and interests of City Federal. Also on December 7, 1989, the Director of the OTS created City Savings Bank--a federally chartered mutual savings association-- to take over certain assets and liabilities of City Federal. The RTC was then appointed as Conservator for and took possession of City Savings Bank.

In accordance with FIRREA, 12 U.S.C. § 1821(d)(3)(B), the RTC then caused to be published notice to all creditors of City Federal that they had until March 17, 1990 to bring any claims against the assets of City Federal. In addition, the RTC

4

sent known creditors, i.e., those then appearing on City Federal's books, individual letters in December of 1989 informing them of the bar date. National Union was among those who were sent a letter notifying it of the RTC's appointment as Receiver and the bar date for the submission of claims. The RTC thereafter published the bar date in the newspaper on December 17, 1989, January 21, 1990, and February 18, 1990. Gulf apparently received from the RTC information concerning the appointment of the RTC as Receiver, but never was sent information concerning the March 17, 1990 bar date.

On December 14, 1989 and February 22, 1990, respectively, Gulf and National Union informed the RTC that effective December 8, 1989--the takeover date of City Federal-- the insurance policies would be treated as canceled pursuant to the terms of these policies that they would automatically terminate upon the takeover of the insured by receiver, other liquidators, or other state or federal officials. Although both National Union and Gulf notified the RTC that they considered the policies canceled effective the date the RTC took over the operations of the bank, neither raised or asserted to the RTC a right to rescind the policies before the March 17, 1990 bar date. That is, prior to the March 17, 1990 bar date, neither National Union nor Gulf informed the RTC that it denied coverage under the polices for events occurring prior to the RTC's appointment as Receiver.

By an Order dated September 21, 1990, the Director of OTS closed City Savings Bank and appointed the RTC as its

5

Receiver. City Savings--a federally chartered mutual savings association--was then organized to take over the assets and liabilities of City Savings Bank. The RTC was appointed Conservator of City Savings and, accordingly, took possession and charge of this newly created entity. Thereafter, by Order dated January 11, 1991, the Director of the OTS closed City Savings and appointed the RTC as its Receiver.

On or about February 27, 1991, the RTC as Receiver for City Savings filed three proofs of loss totaling approximately $152 million with National Union and Gulf, claiming that the losses were covered by the insurance policies. The three claims were attributed to the alleged dishonest and/or fraudulent acts of City Federal employees. After investigating the RTC's claims, National Union and Gulf tendered the entire premiums paid for the insurance policies, plus interest, to the RTC on June 12th and 26th, 1992, respectively, in an effort to rescind the insurance contracts. The RTC rejected the premium refunds.

On August 7, 1992, National Union and Gulf commenced the declaratory judgment action against the RTC, as Receiver of City Savings, asserting that National Union and Gulf had the right to rescind the insurance policies issued to CityFed. The RTC made a motion to dismiss the declaratory judgment action for lack of subject matter jurisdiction, and also filed a counterclaim.

The district court granted the RTC's motion to dismiss the declaratory judgment action. The district court held that under § 1821(d)(3) and (d)(13)(D) of FIRREA, it lacked subject

6

matter jurisdiction over the declaratory judgment action seeking rescission. The district court also held that under FIRREA, National Union and Gulf were jurisdictionally barred from raising their rescission theory as an affirmative defense to the counterclaim brought by the RTC against them.

## II. DISCUSSION

### A. APPELLATE JURISDICTION

We first address whether we have appellate jurisdiction over the order of the district court dismissing appellant's complaint for lack of subject matter jurisdiction. Because the RTC brought a counterclaim which has not been finally adjudicated, the district court's dismissal of National Union and Gulf's Complaint for Declaratory Judgment would not ordinarily be considered a "final judgment," and we would not ordinarily have appellate jurisdiction under 28 U.S.C. § 1291. However, pursuant to Fed. R. Civ. P. 54(b), the district court entered a final judgment dismissing National Union and Gulf's Complaint for Declaratory Judgment.[0] We therefore have appellate jurisdiction

---

[0] Rule 54(b) of the Federal Rules of Civil Procedure provides, in relevant part:

> When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

Fed. R. Civ. P. 54(b). Rule 54(b) may be used to grant final judgment status over a declaratory judgment action which is part

7

over the district court's dismissal of the declaratory judgment complaint. 28 U.S.C. § 1291.

The parties did not raise the question of whether we have appellate jurisdiction to review that portion of the district court's Order entered May 27, 1993 which barred National Union and Gulf from raising affirmative defenses to any counterclaims brought by the RTC. Since appellate jurisdiction cannot be waived or consented to by the parties, Carpenters Health & Welfare Fund of Phila. & Vicinity v. Kenneth R. Ambrose, Inc., 665 F.2d 466, 468 (3d Cir. 1981), we must determine whether we have jurisdiction to review the district court's holding concerning the bar against affirmative defenses by National Union and Gulf.

The district court certified the entire Order dated May 27, 1993 as final under Fed. R. Civ. P. 54(b), including its holding that National Union and Gulf could not raise their rescission theory as an affirmative defense to the counterclaim brought by the RTC. However, simply because a district court certifies a matter under Rule 54(b) does not automatically result in proper appellate jurisdiction. We first review a Rule 54(b)

of a multi-claim litigation, so long as the declaratory judgment aspect of the litigation has in fact been brought to final judgment. See, e.g., Heasley v. Belden & Blake Corp., 2 F.3d 1249, 1253 n.4 (3d Cir. 1993); Granite State Ins. Co. v. Degerlia, 925 F.2d 189, 191 (7th Cir. 1991); Horn v. Transcon Lines, Inc., 898 F.2d 589, 594 (7th Cir. 1990). Thus, the term "claim" as used in Rule 54(b) must be construed broadly so as to include declaratory judgment actions. Such a broad construction of the term "claim" is consistent with common legal usage. For example, Black's Law Dictionary defines "claim," in part, as "[a] cause of action." Black's Law Dictionary 247 (6th ed. 1990).

8

certification to determine whether the matter being certified was actually "final," and in this determination we exercise plenary review. Gerardi v. Pelullo, 16 F.3d 1363, 1368 (3d Cir. 1994). "Then, if we conclude[] that the judgment[] [was] final, we . . . consider whether the district court abused its discretion in determining that [it was] ready for appeal taking into account judicial administrative interests as well as the equities involved." Id. (internal quotations, modifications and citation omitted).

As to the first inquiry, the reason for us inquiring into whether a matter certified under Rule 54(b) is actually "final" is because Rule 54(b) allows certification of finality in situations where a claim or a party's interest is adjudicated to finality, but the claim or party happens to be a part of a continuing litigation presenting multiple claims or multiple parties. Rule 54(b) does not allow a claim which when viewed separately is not final to be considered final. In other words, Rule 54(b) only parses out final claims or parties whose claims are final from a multiclaim or multiparty litigation--it does not operate to magically deem a non-final claim "final." See id.

We need only address the first inquiry, whether the Order barring National Union and Gulf from raising the affirmative defense of rescission was final. Clearly, it was not. The affirmative defense of rescission would have been a defense to the counterclaim brought by the RTC against National Union and Gulf. That counterclaim has not been finally adjudicated, and therefore any orders concerning the

counterclaim, including the district court's order that the affirmative defense of rescission could not be raised as an affirmative defense to the counterclaim, are not final orders. Thus, the portion of the Order barring National Union and Gulf from raising rescission as an affirmative defense, not being a final order, was not properly certified by the district court under Rule 54(b).

We nevertheless conclude that under the doctrine of pendent appellate jurisdiction, we have appellate jurisdiction to review the district court's Order which held that National Union and Gulf are barred from raising the affirmative defense of rescission in the counterclaim brought by the RTC. We have stated that "pendent appellate jurisdiction over an otherwise unappealable order is available only to the extent necessary to ensure meaningful review of an appealable order." Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 209 (3d Cir. 1990).[0] In

---

[0]Our statement in Hoxworth was made in reliance on our holding in Kershner v. Mazurkiewicz, 670 F.2d 440 (3d Cir. 1982) (in banc). In Kershner we held "that a pendent class certification order is not appealable under section 1292(a)(1) unless the preliminary injunction issue cannot properly be decided without reference to the class certification question." Id. at 449.
In Hoxworth, we did not discuss the relevance of a decision in which we seemed to broaden the availability of pendent appellate jurisdiction. In United States v. Spears, 859 F.2d 284 (3d Cir. 1988), we held that "[o]nce we have taken jurisdiction over one issue in a case, we may, in our discretion, consider otherwise nonappealable issues in the case as well, where there is sufficient overlap in the facts relevant to the appealable and nonappealable issues to warrant our exercising plenary authority over the appeal." Id. at 287 (internal quotations and brackets omitted). We went on in Spears to apparently limit the restrictive holding of Kershner to the preliminary injunction context. Id. at 288.

this case, in order for us to meaningfully determine whether National Union and Gulf may, consistent with due process, be barred from bringing their declaratory judgment action, it is necessary for us to address whether they would be able to raise rescission as a defense or affirmative defense in a proceeding against them.  See infra typescript at pp. 26-34.  Therefore, we properly have appellate jurisdiction over the order barring National Union and Gulf from raising rescission as an affirmative defense.

B.  ANALYSIS OF § 1821(d)(13)(D)

The issue presented is whether the district court properly determined that under FIRREA, 12 U.S.C. § 1821(d)(3) and (d)(13)(D), the district court lacked subject matter jurisdiction over National Union and Gulf's declaratory judgment action seeking rescission of the insurance policies in question. Furthermore, we must determine whether the district court correctly determined that under FIRREA, National Union and Gulf are barred from raising rescission as an affirmative defense to the RTC's counterclaim.  The issue of whether the district court correctly interpreted § 1821(d)(3) and (d)(13)(D) of FIRREA concerning subject matter jurisdiction is a legal question over which we exercise plenary review.  Cf. Federal Ins. Co. v.

---

In this case, we meet the more stringent test for the availability of pendent appellate jurisdiction as set forth in Kershner and Hoxworth.  We therefore do not address the more liberal standard of pendent appellate jurisdiction as articulated in Spears.

11

<u>Richard I. Rubin & Co.</u>, 12 F.3d 1270, 1282 (3d Cir. 1993), <u>cert. denied</u>, ___ U.S. ___, ___ S. Ct. ___ (U.S. May 23, 1994).

Section 1821(d)(13)(D) of FIRREA contains a jurisdictional bar which is central to this appeal. That section provides:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The "[e]xcept as otherwise provided in this subsection" language quoted above refers to subsection (d) of § 1821. <u>E.g.</u>, <u>Marquis v. FDIC</u>, 965 F.2d 1148, 1153 & n.5 (1st Cir. 1992). "Subsection (d) . . . provides for <u>de novo</u> district court jurisdiction only after the filing of a claim with, and the initial processing of that claim by, RTC pursuant to § 1821(d)(5) and (6)(A)." <u>Rosa v. RTC</u>, 938 F.2d 383, 391-92 (3d Cir.), <u>cert. denied</u>, ___ U.S. ___, 112 S. Ct. 582 (1991).[0] Thus, we have characterized the jurisdictional restriction contained in § 1821(d)(13)(D) as a statutory exhaustion requirement: in order to obtain jurisdiction to bring a claim in federal court, one must exhaust administrative remedies by submitting the claim to the receiver in accordance with the

---

[0] The RTC as receiver is subject to the same provisions of FIRREA as the FDIC, with some exceptions. 12 U.S.C. §1441a(b)(4)-(5).

12

administrative scheme for adjudicating claims detailed in
§1821(d).  Rosa, 938 F.2d at 391.[0]

"When the RTC is appointed as receiver of a failed
thrift institution, the RTC must promptly publish a notice to the
institution's creditors to present their claims and proof by a
specified date, which may not be less than 90 days after
publication.  12 U.S.C. § 1821(d)(3)(B)(i). . . . In addition,
the RTC must mail a similar notice to any creditor shown on the
institution's books.  12 U.S.C. § 1821(d)(3)(C)."  Althouse v.
RTC, 969 F.2d 1544, 1545 (3d Cir. 1992).

The RTC provided such notice to National Union.  On
December 8, 1989, the RTC mailed to National Union and Gulf a
letter of notification of the appointment of the RTC as Receiver.
The RTC also notified National Union that it was required to
submit to the RTC all claims by March 17, 1990.[0]  National Union

---

[0]We have previously described in detail the administrative scheme
for adjudicating claims under FIRREA, 12 U.S.C. § 1821(d).
Althouse v. RTC, 969 F.2d 1544, 1545-46 (3d Cir. 1992); FDIC v.
Shain, Schaffer & Rafanello, 944 F.2d 129, 131-32 (3d Cir. 1991).
[0]Although Gulf received notice that the RTC was appointed
Receiver, Gulf never received a notice in the mail concerning the
March 17, 1990 bar date and the requirement that any claims
against the failed institution had to be submitted to the RTC by
that date.  Gulf contends that given these facts, it did not
receive proper notice under § 1821(d)(3)(B), and that therefore
it cannot be bound by the requirement to exhaust the
administrative remedies provided for under FIRREA.  In light of
our conclusion that § 1821(d)(13)(D) does not bar Gulf from
raising rescission as an affirmative defense, we need not address
the issue of proper notice as to the affirmative defense.  As for
our conclusion that Gulf's declaratory judgment action is
jurisdictionally barred, we explain below why depriving Gulf of
the right to bring a declaratory judgment action comports with
due process, even assuming that Gulf did not receive proper
notice.

13

and Gulf did not submit by March 17, 1990 any claim or assertion to the RTC that they had a right to rescind the insurance policies in question. Accordingly, we conclude that neither National Union nor Gulf exhausted the administrative remedies provided for under FIRREA. Thus, unless the jurisdictional bar contained in § 1821(d)(13)(D) is inapplicable, the district court lacked jurisdiction over National Union and Gulf's declaratory judgment action for rescission and their affirmative defenses of rescission.

We must carefully examine the jurisdictional bar contained in § 1821(d)(13)(D) to determine whether it deprived the district court of jurisdiction to hear National Union and Gulf's declaratory judgment action for rescission and their affirmative defenses of rescission. In so doing, we keep in mind cardinal rules of statutory interpretation: "The starting point for interpretation of a statute is the language of the statute itself." Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, ___, 110 S. Ct. 1570, 1575 (1990) (internal quotations and citation omitted). "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enter. Inc., 489 U.S. 235, 242, 109 S. Ct. 1026, 1031 (1989) (internal quotations, brackets and citation omitted).

1. Whether the Insurance Policies Are "Assets"
   Under § 1821(d)(13)(D)

14

As a preliminary matter, we consider whether the insurance polices issued by National Union and Gulf to CityFed and its subsidiaries are "assets" of City Savings as that term is used in § 1821(d)(13)(D)(i).  Section 1821(d)(13)(D) provides that "no court shall have jurisdiction over--(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver . . . ." §1821(d)(13)(D)(i) (emphasis added).  If the insurance policies are not assets of the bank, then National Union and Gulf's declaratory judgment action for and affirmative defenses of rescission of those insurance policies would not be barred under § 1821(d)(13)(D).

FIRREA does not provide a definition of "assets" as that term is used specifically in § 1821(d)(13)(D)(i).  In the absence of a specific definition, we refer to the definition of the term "assets" in common legal usage:

> Property of all kinds, real and personal, tangible and intangible . . . .  The entire property of a person, association, corporation, or estate that is applicable or subject to the payment of his or her or its debts.

Black's Law Dictionary 117 (6th ed. 1990).  Insurance policies which a bank has purchased and under which it is an insured falls neatly within this definition of assets.  Insurance policies obviously are important property interests of individuals and economic entities.  Furthermore, we believe that business people consider an insurance policy to be an asset of the named insured, as the term "asset" is commonly used in the business world.

15

Finally, reported court decisions have assumed that insurance policies are assets of institutions which are holders of the policies. See, e.g., FDIC v. Aetna Casualty & Surety Co., 947 F.2d 196, 199 (6th Cir. 1991); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1001-02 & n.10 (4th Cir.), cert. denied, 479 U.S. 876, 107 S. Ct. 251 (1986); FDIC v. Gulf Life Ins. Co., 737 F.2d 1513, 1514-20 (11th Cir. 1984); Samuels v. Acme Market, 845 F. Supp. 292, 294 (E.D. Pa. 1994); Holloway v. New Jersey, 566 A.2d 1177, 1180 (N.J. Super. Ct. Law Div. 1989).

Whether City Savings will ultimately be entitled to collect under the insurance policies is not relevant to the threshold question of whether the insurance policies issued to CityFed and its subsidiaries are assets of the banks. An insurance policy is of value to the owner and named insured of the policy, even though it is possible that the owner and named insured will ultimately be found not to be entitled to a particular recovery under the policy. For all of the above reasons, we conclude that the plain meaning of the term "assets" contained in § 1821(d)(13)(D)(i) includes the insurance policies issued by National Union and Gulf to CityFed and its subsidiaries.

Having concluded that the insurance polices are assets of City Savings, we must examine the jurisdictional bar contained in § 1821(d)(13)(D) to determine whether it deprived the district court of jurisdiction to hear (1) National Union and Gulf's declaratory judgment action for rescission of the insurance

16

policies and (2) their affirmative defenses of rescission of the insurance policies.

### 2. Application of Section 1821(d)(13)(D) to the Declaratory Judgment Action

We first address the jurisdictional bar as it applies to the declaratory judgment action. The language of §1821(d)(13)(D) appears to include a bar to declaratory judgment actions: "[N]o court shall have jurisdiction over—(i) any claim or action for payment from, or <u>any action seeking a determination of rights with respect to, the assets of any depository institution</u> for which the Corporation has been appointed receiver . . . ." § 1821(d)(13)(D)(i) (emphasis added). The plain meaning of the emphasized words quoted immediately above includes declaratory judgment actions: a declaratory judgment action <u>is</u> an "action seeking a determination of rights." Black's Law Dictionary defines "declaratory judgment," in relevant part, as follows:

> Statutory . . . remedy for the determination of a justiciable controversy where the plaintiff is in doubt as to his [or her] legal rights. A binding adjudication of the rights and status of litigants even though no consequential relief is awarded.

Black's Law Dictionary 409 (6th ed. 1990). The same dictionary defines "action," in part, as "a lawsuit brought in a court; a formal complaint within the jurisdiction of a court of law." <u>Id.</u> at 28. When one initiates a declaratory judgment, one brings a lawsuit in court and files a complaint. National Union and Gulf did exactly that in this case. An action for declaratory

17

judgment is plainly an "action." No reasonable argument can be offered that the plain meaning of the "any action seeking a determination of rights" language of § 1821(d)(13)(D) does not include complaints requesting declaratory relief. Therefore, unless it appears that interpreting § 1821(d)(13)(D) would produce a result "demonstrably at odds" with the general purpose of FIRREA, Ron Pair Enter., 489 U.S. at 242, 109 S. Ct. at 1031, we will conclude that declaratory judgment actions are barred by § 1821(d)(13)(D).

An argument can be made that interpreting §1821(d)(13)(D) to include a bar to National Union and Gulf's declaratory judgment action produces an odd result when §1821(d)(13)(D) is not viewed in isolation, but with reference to the administrative claims procedure of FIRREA set out in §1821(d)(3), (d)(5) and (d)(6). This argument begins by pointing out that National Union and Gulf's declaratory judgment action is not a creditor's claim. Since National Union and Gulf will owe the RTC money if it is determined that the RTC may collect under the insurance policies, they are potential debtors, and their action seeking a declaration that the insurance policies are rescinded is therefore a potential debtor's claim, not a creditor's claim. The argument continues as follows: Section 1821(d)(13)(D) acts as a jurisdictional bar to claims, but there is an exception to this jurisdictional bar in that claims which have been properly submitted through the administrative claims procedure may be tried de novo in federal court. §1821(d)(6)(A); Rosa, 938 F.2d at 391-92. Therefore, it is contended that since

18

the jurisdictional bar of § 1821(d)(13)(D) contains an exception for claims submitted through the administrative claims procedure, § 1821(d)(13)(D) must be read and interpreted with reference to the administrative claims procedure contained in § 1821(d)(3), (d)(5) and (d)(6). Under 1821(d)'s administrative claims procedure, <u>creditors</u>, not debtors, are given notice to file claims with the receiver. §1821(d)(3)(B),(C). After a determination has been made with regard to a claim that has been submitted, the claimant may request administrative review of the claim or file suit in federal court. § 1821(d)(6)(A). Since under § 1821(d)(3)(B), (C), only <u>creditors</u> are given notice to submit claims to the RTC, the argument goes, the jurisdictional bar contained in §1821(d)(13)(D) could not have been intended to deprive jurisdiction for actions brought by non-creditors. In other words, the argument concludes, only holders of creditors' claims, for whom the statute provides notice and who may present their claims in the administrative claims procedure, are meant to be jurisdictionally barred by § 1821(d)(13)(D) if the claimant has not in fact exhausted the administrative remedies.

That § 1821(d)(13)(D)'s ouster of jurisdiction should be limited to suits otherwise governed by the administrative claims procedure set out in § 1821(d) is a position that has been advanced, or at least suggested, by several courts.[0] National

[0] <u>Cf. Homeland Stores, Inc. v. RTC</u>, 17 F.3d 1269, 1274 & n.5 (10th Cir. 1994); <u>RTC v. Midwest Fed. Sav. Bank of Minot</u>, 4 F.3d 1490, 1496-97 (9th Cir. 1993); <u>National Trust for Historic Preservation v. FDIC</u>, 995 F.2d 238, 240 (D.C. Cir. 1993), <u>vacated</u>, 5 F.3d 567 (D.C. Cir. 1993), <u>reinstated in relevant part</u>, 21 F.3d 469 (D.C. Cir. 1994); <u>FDIC v. diStefano</u>, 839 F. Supp. 110, 115-16 (D.R.I.

Union and Gulf advocate a version of that position in this appeal. They accurately point out that their declaratory judgment action is not a creditor's claim and therefore their action is not the type of "claim" for which FIRREA's administrative claims procedure was established. Furthermore, Gulf was never put on notice that it had to submit claims to the RTC by the March 17, 1990 bar date. Therefore, Gulf contends that it especially cannot be held to have been bound by the requirement to exhaust the administrative claims procedure as a prerequisite to federal court jurisdiction. Assuming that exhaustion of administrative claims procedure was not applicable to their action for declaratory judgment, National Union and Gulf conclude that the jurisdictional bar cannot apply.

However, we reject the suggestion that the broad bar to jurisdiction indicated by the plain language of § 1821(d)(13)(D) should be strained and limited by referring to the administrative claims procedure of § 1821(d)(3), (d)(5) and (d)(6). Although there is surely an interrelationship between the jurisdictional bar contained in § 1821(d)(13)(D) and the administrative claims procedure, this does not mean that the class of actions addressed by the jurisdictional bar is necessarily identical to the class of actions addressed by the administrative claims procedure. As explained below, even assuming that § 1821(d)(13)(D)'s ouster of jurisdiction affects actions not otherwise governed by the

1993); In re Scott, 157 B.R. 297, 308-320 (Bankr. W.D. Tex. 1993), vacated, 162 B.R. 1004 (Bankr. W.D. Tex. 1994); In re Continental Fin. Resources Inc., 154 B.R. 385, 387-88 (D. Mass. 1993); In re Purcell, 150 B.R. 111, 113-16 (D. Vt. 1993).

20

administrative claims procedure, such a regime would not be at odds with the intentions of Congress in passing FIRREA.

The language barring jurisdiction over "any action seeking a determination of rights" contained in § 1821(d)(13)(D) would appear to cover a larger class of actions than does the language contained in § 1821(d)(3), (d)(5), and (d)(6), concerning the administrative claims procedure. For example, in the administrative claims procedure portion of FIRREA, §1821(d)(3)(B) and (C) require notice to be given only to claims of creditors, and § 1821(d)(5) and (d)(6) refer only to "any claim"; in contrast, the jurisdictional bar of § 1821(d)(13)(D) refers to "any action seeking a determination of rights," and does not limit such actions to actions concerning creditors' claims. In making this comparison, a definition of "claim" and "creditor" would be useful. Unfortunately, neither the text of FIRREA nor its legislative history provide an explicit definition of the term "claim" or "creditor" as they are used in FIRREA.[0] In light of FIRREA's lack of definitions of these terms, the Court of Appeals for the District of Columbia Circuit has suggested that the Bankruptcy Code is a promising source to turn to in defining "claim" and "creditor" as those terms are used in FIRREA. Office & Professional Employees Int'l Union, Local 2 v. FDIC, 962 F.2d 63, 68 (D.C. Cir. 1992). Because the administrative claims procedure of FIRREA contained in § 1821

---

[0]See generally Pub. L. No. 101-73, 103 Stat. 183 (1989); H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 291 (1989), reprinted in 1989 U.S.C.C.A.N. 86.

21

(d)(3), (d)(5) and (d)(6) addresses a debtor-creditor relationship, we agree with the D.C. Circuit in this regard, and in the absence of more specific legislative authority, in interpreting FIRREA we will apply the definition of "claim" and "creditor" contained in the Bankruptcy Code, 11 U.S.C. § 101(5), (10)(A).[0]  The Bankruptcy Code defines "claim" as follows:

> "claim" means--
> (A)  <u>right to payment</u>, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B)  <u>right to an equitable remedy for breach of performance if such breach gives rise to a right to payment</u>, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5) (emphasis added).  The term "creditor" is defined in relevant part as an "entity that has a claim against the debtor."  § 101(10)(A).  Hence a "claim" or a "creditor's claim" is essentially <u>an action asserting a right to payment</u>.  In

---

[0]We note that we interpret the term "claim" as used in Fed. R. Civ. P. 54(b) more broadly than we interpret that term as used in FIRREA.  <u>See</u> <u>supra</u> note 3.  The reason for this is that Rule 54(b) of the Federal Rules of Civil Procedure is a procedural rule of general applicability, while the administrative claims procedure of FIRREA addresses the processing of claims in the particular context of insolvent thrift institutions.  Because we borrow the definition of "claim" and "creditor" from the Bankruptcy Code, 11 U.S.C. § 101(5), (10), we acknowledge that in future cases under FIRREA, circumstances may justify straying from the Bankruptcy Code's definition of those terms.  For instance, if the language of FIRREA or the legislative history of FIRREA spoke directly to a factual scenario, such direct authority would presumably trump any reliance on the Bankruptcy Code.

contrast, the phrase "any action"[0] does not contain any limitations, and plainly denotes any affirmative action taken by a party to commence any suit in any court, whether or not such an action asserts a right to payment, and whether or not such an action is brought by a creditor or a debtor.

With these definitions in mind, and for the purposes of argument, we will assume that the terms "claims" and "creditors['] . . . claims" as used in § 1821(d)(3) denote a smaller class of actions than does the "any action seeking a determination of rights" language of § 1821(d)(13)(D)(i).[0] For

---

[0]Black's Law Dictionary defines "action", in relevant part, as "a lawsuit brought in a court." Black's Law Dictionary 28 (6th ed. 1990).

[0]We make this assumption only for the purpose of argument. We leave for another day the issue of whether § 1821(d)(3), (d)(5) and (d)(6) requires or permits the RTC to consider claims not asserting a right to payment, such as National Union and Gulf's action for declaratory judgment of rescission, in the administrative claims procedure of FIRREA. Moreover, at least one court of appeals has indicated a willingness to defer to the receiver when it has interpreted the administrative claims procedure broadly to allow the receiver to make determinations over a larger class of claims than the plain language of FIRREA might suggest. Heno v. FDIC, 20 F.3d 1204, 1208-10 (1st Cir. 1994). If the RTC accepted a declaratory judgment action in its administrative claims procedure and made a determination concerning such an action, it would appear that the exception to the jurisdictional bar contained in § 1821(d)(13)(D) would apply. As noted above, in this case neither National Union nor Gulf submitted the rescission theory through the administrative claims procedure by the March 17, 1990 bar date, so we need not address this issue.

In Rosa v. RTC, 938 F.2d 383 (3d Cir.), cert. denied, ___ U.S. ___, 112 S. Ct. 582 (1991), we indicated that there is an interrelationship between the jurisdictional bar contained in §1821(d)(13)(D) and the administrative claims procedure contained in § 1821(d)(3), (d)(5) and (d)(6) by characterizing the jurisdictional bar as a "statutory exhaustion requirement." 938 F.2d at 391. Surely that characterization is accurate as to a "claim," i.e., an action asserting a right to payment. In the

23

instance, under these definitions, National Union and Gulf's declaratory judgment action for rescission of insurance policies which they issued would not be a "claim" addressed in the administrative claims procedure, but would be an "action" jurisdictionally barred by § 1821(d)(13)(D). Yet we do not see why a jurisdictional bar which might cover a larger class of actions than would be addressed by the administrative claims procedure would be inconsistent with the general goals of Congress in passing FIRREA. One of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation.[o] With this goal in mind, it would be perfectly consistent for Congress to provide a scheme wherein a holder of a claim for payment from the assets

portion of the opinion characterizing the jurisdictional bar as an exhaustion requirement, the Rosa court addressed only "claims," as opposed to the "any action" language contained in §1821(d)(13)(D)(i), stating that "[s]ubsection (d) of § 1821 provides for de novo district court jurisdiction only after the filing of a claim with, and the initial processing of that claim by, RTC." 938 F.2d at 391–92 (emphasis added). But Rosa did not address or decide the interesting issue which is still an open question in this court: whether the class of actions addressed by the administrative claims procedure is smaller than the class of actions addressed by the jurisdictional bar. If it were decided that the administrative claims procedure covered a smaller class of actions than addressed by the jurisdictional bar, then for those actions addressed by the jurisdictional bar but not addressed in the administrative claims procedure the jurisdictional bar would not be an exhaustion requirement; rather the jurisdictional bar would be an independent and outright bar of jurisdiction.
[o]"The primary purpose underlying FIRREA's exhaustion scheme is to allow RTC to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." Rosa, 938 F.2d at 396.

24

of the failed institution would be provided an administrative remedy and <u>de</u> <u>novo</u> court review, while the holder of a claim not asserting a right of payment and who wanted only a <u>declaration</u> of rights against the failed bank would be provided no administrative remedy or federal court access.

The rationale for this treatment of actions which do not seek payment from the assets of the failed institution would be that if the RTC leaves the party wishing to bring an action not seeking payment alone, that party should also leave the RTC alone. Accordingly, a party wishing to bring an action not seeking payment cannot summon the RTC into court to adjudicate a declaration of rights against the RTC. Rather, the party wishing to bring an action not for payment must instead wait and see if the RTC will sue her. If it does, then she will be able to defend herself against the RTC's action at that time. According to this rationale, the crisis facing failed banks is so extreme that the receiver is to focus on preserving the failed bank's assets, without the distraction and substantial cost of defending itself in court against declaratory judgment actions which do not seek a right to payment from the failed institution's assets. Indeed, since the RTC might never choose to sue the party wishing to obtain a declaratory judgment that it is not liable to the RTC, it may turn out that such declaratory judgment relief will be unnecessary.

It may be objected that such a scheme would be unfair to a party wishing to obtain a declaration of rights vis-a-vis the RTC. By stripping the party of its right to obtain a

25

declaratory judgment, the party must live indefinitely with the threat that litigation might at any time be commenced against it by the RTC. But FIRREA was in fact passed to give the receiver extraordinary powers. We acknowledge that the ability to obtain a declaratory judgment is a valuable right in that it enables a party to ascertain its rights and obligations sooner than would be possible if the party were forced to await a lawsuit by an opposing party. However, simply because the right to bring a declaratory judgment action is valuable does not mean that Congress cannot take it away consistent with due process. Congress apparently has determined that the societal benefits resulting from the right to bring actions for a determination of rights, including declaratory judgments, are outweighed by the societal benefits resulting from the RTC being able to avoid costly and perhaps unnecessary litigation.[0] If the crisis facing failed institutions is so severe that Congress decides that it does not want the RTC spending limited time and resources processing declaratory judgment actions in its administrative claims procedure or defending declaratory judgment actions in court, it has the power to act accordingly. We believe that the broad jurisdictional bar contained in the plain language of §1821(d)(D)(13) reveals that Congress did in fact make this determination.

Congress could easily have limited § 1821(d)(13)(D)'s jurisdictional bar to "claims," thereby limiting the

---

[0] See supra note 13.

26

jurisdictional bar to the same class of actions dealt with in the administrative claims procedure. But it did not. The jurisdictional bar goes further and, in addition to barring "any claim . . . for payment," § 1821(d)(13)(D)(i), it contains a bar against "any action seeking a determination of rights with respect to [] the assets of any depository institution for which the Corporation has been appointed receiver," id. "In construing a statute we are obliged to give effect, if possible, to every word Congress used," Reiter v. Sonotone Corp., 442 U.S. 330, 339, 99 S. Ct. 2326, 2331 (1979), and without good reason, we will not assume that a portion of a statute is superfluous, void or insignificant, see 2A Norman J. Singer, Statutes and Statutory Construction § 46.06, at 119–20 (5th ed. 1992).

We therefore assume Congress meant what it said when it included a jurisdictional bar to "any action." The term "any action" includes actions by debtors as well as creditors, and is not limited to actions asserting a right to payment. "Absent a clearly expressed legislative intention to the contrary, [the statutory] language must ordinarily be regarded as conclusive." Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S. Ct. 2051, 2056 (1980). Because a jurisdictional bar to declaratory judgment actions is consistent with Congress' intention in passing FIRREA, we give effect to the plain language of § 1821(d)(13)(D) and hold that it bars National Union and Gulf's declaratory judgment action, regardless of whether National Union and Gulf are characterized as creditors or

27

debtors, and despite the fact that National Union and Gulf do not assert a right to payment.

It could be argued that if Congress did in fact intend that actions seeking a determination of rights but which do not seek a right to payment, such as National Union and Gulf's declaratory judgment action for rescission, would be jurisdictionally barred from both administrative proceedings and courts of law, that this complete bar to administrative and court access would result in an unconstitutional deprivation of due process under the Fifth Amendment. If this objection were valid, we might eschew interpreting the "any action seeking a determination of rights" language of § 1821(d)(13)(D) so as to cover a larger class of actions than might be covered under the administrative claims procedure of § 1821(d)(3), (d)(5) and (d)(6). This is because "where an otherwise acceptable construction of a statute would raise serious constitutional problems, the [c]ourt will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397 (1988).

However, we do not believe that barring jurisdiction over declaratory judgment actions not seeking a right to payment in both administrative proceedings and courts of law would violate the Due Process Clause. This is because it appears that whatever rights a party wishes to have announced in a declaratory judgment action may later be adjudicated in the administrative

28

claims procedure or in an action with the RTC. Thus, the party stripped of her right to bring a declaratory judgment action gets her chance for a hearing--her "opportunity to be heard"[0]--even though her hearing may be delayed. For instance, if the inability to have a court declare rights in advance leads to the RTC violating a party's rights causing actual damages, then that party will have a "claim"--a right to payment--which may be submitted in the administrative claims procedure.[0] That this

---

[0]Logan v. Zimmerman Brush Co., 455 U.S. 422, 429-30, 102 S. Ct. 1148, 1154 (1982) (internal quotations and citation omitted).
[0]We recognize that as a result of our holding, the following problem could arise: The RTC, having taken over as receiver, could subsequent to receivership cause injury to a party, giving rise to a cause of action. By the time the cause of action arose, however, the bar date by which time creditors were put on notice to bring claims might have passed. In such a situation, the RTC could argue that the claim based on the cause of action cannot be submitted to the administrative claims procedure because the bar date has passed. At the same time, the RTC could invoke the jurisdictional bar contained in § 1821(d)(13)(D) and argue that no court has jurisdiction over the claim because the administrative claims procedure has not been exhausted. In essence, this would forever deprive the claimant of a hearing. It appears that this result would violate the Due Process Clause of the Fifth Amendment. Cf. Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 583-87, 109 S. Ct. 1361, 1374-76 (1989); Logan v. Zimmerman Brush Co., 455 U.S. 422, 428-31, 102 S. Ct. 1148, 1154 (1982); Boddie v. Connecticut, 401 U.S. 371, 375-80; 91 S. Ct. 780, 784-87 (1971).

If a party were never given a reasonable opportunity to submit an action seeking a right to payment to the administrative claims procedure (and the concomitant right to judicial review), then the jurisdictional bar contained in § 1821(d)(13)(D) would result in an unconstitutional deprivation of due process as applied to that party. In other words, when a party presses an action not merely for a declaration of rights, but rather one seeking a right to payment, the teachings of Coit, Logan, and Boddie suggest that a complete bar of jurisdiction, in both administrative proceedings and courts of law, would as applied to that party constitute a deprivation of property without due process of law.

29

delay in obtaining relief does not violate the Due Process Clause is made clear from the teaching of the Supreme Court in Bob Jones University v. Simon, 416 U.S. 725, 94 S. Ct. 2038 (1974).

In Bob Jones University, the Supreme Court addressed a due process challenge to the Anti-Injunction Act of the Internal Revenue Code, 26 U.S.C. § 7421(a). The Anti-Injunction Act provides in part that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court." Id. The Supreme Court held that § 7421(a) barred suit by Bob Jones University to enjoin the Internal Revenue Service ("IRS") from revoking a favorable ruling letter concerning tax-deductible contributions which the IRS had previously issued. 416 U.S. at 727-50, 94 S. Ct. 2041-52. The University argued that by barring suit for injunctive relief, it would either be forced to await assessment of taxes before being able to challenge the assessed taxes in administrative proceedings, or else it would have to pay income taxes and commence a refund proceeding. Id. at 746-48, 94 S. Ct. at 2050-51. This delay in adjudicating whether the ruling letter should be revoked or not would allegedly cause serious financial harm to the University because revocation of the ruling letter would result in the loss of many donations from contributors who depend on tax deductible status

---

It therefore appears that if a party has not been given reasonable notice and an opportunity to be heard concerning an action for a right to payment in the administrative claims procedure of FIRREA, the jurisdictional bar contained in §1821(d)(13)(D) could not constitutionally apply to that party, and a court would have jurisdiction over that party's claim. See the discussion of this issue infra typescript at 32-37 and infra note 22.

when making those contributions.  The University contended that

such serious financial hardship resulting from the jurisdictional

bar resulted in a deprivation of due process.

> The Supreme Court rejected the due process challenge:
>     This is not a case in which an aggrieved party has
> no access at all to judicial review.  Were that true,
> our conclusion might well be different. . . .
> [Petitioner] may . . . petition the Tax Court to review
> the assessment of income taxes.  Alternatively,
> petitioner may pay income taxes, . . . exhaust the
> Service's internal refund procedures, and then bring
> suit for a refund.  <u>These review procedures offer
> petitioner a full, albeit delayed, opportunity to
> litigate the legality of the Service's revocation of
> tax-exempt status</u> . . . .
>     We do not say that these avenues of review are the
> best that can be devised.  They present serious
> problems of delay, during which the flow of donations
> to an organization will be impaired and in some cases
> perhaps even terminated. . . . [A]lthough the
> congressional restriction to postenforcement review may
> place an organization claiming tax-exempt status in a
> precarious financial position, the problems presented
> do not rise to the level of constitutional infirmities,
> in light of the powerful governmental interests in
> protecting the administration of the tax system from
> premature judicial interference.

<u>Id.</u> (emphasis added).  Thus, even assuming that the

jurisdictional bar contained in the Anti-Injunction Act would

cause the University to suffer a delay in bringing its action,

which delay in itself would result in substantial economic

injury, the Supreme Court rejected the due process challenge to

the limitation on court jurisdiction.

The holding in <u>Bob Jones University</u> indicates that no

viable due process challenge can be made to the jurisdictional

limitation contained in § 1821(d)(13)(D) as applied to National

Union and Gulf's declaratory judgment action.  Because National

Union and Gulf, as explained below, will have an opportunity to raise their right to rescission as an affirmative defense to the RTC's counterclaim, they too will have a full, although delayed, opportunity to litigate the rescission issue.[0]  In light of the important government interests in addressing the crisis of insolvent thrift institutions, even if declaratory judgment actions not asserting a right to payment were completely jurisdictionally barred from the administrative claims procedure and courts of law, this would not present a due process violation.  In contrast, where an action is not merely declaratory in nature, but rather asserts a right to payment, a complete bar to such a right-to-payment action in administrative proceedings and in courts of law would appear to be an unconstitutional deprivation of due process, since the holder of the right to payment would never have an opportunity to be heard concerning property already allegedly owed her.  See, e.g., id.; see also Coit Independence Joint Venture v. FSLIC, 489 U.S. 561, 583-87, 109 S. Ct. 1361, 1374-76 (1989); Logan v. Zimmerman Brush Co., 455 U.S. 422, 429-30, 102 S. Ct. 1148, 1154 (1982); Mathews v. Eldridge, 424 U.S. 319, 332-49, 96 S. Ct. 893, 901-10 (1976); supra note 16.  Cf. Lawrence Gene Sager, Foreword: Constitutional

---

[0]Although Bob Jones University dealt with injunctive rather than declaratory relief, we find its holding to be authoritative as to actions concerning declaratory relief.  This is especially because in another setting the Supreme Court itself has recognized that "there is little practical difference between injunctive and declaratory relief."  California v. Grace Brethren Church, 457 U.S. 393, 408, 102 S. Ct. 2498, 2508 (1982).

32

Limitations on Congress' Authority to Regulate the Jurisdiction of the Federal Courts, 95 Harv. L. Rev. 17, 69-74 (1981).

Finally, we note that if a complete jurisdictional bar to actions not seeking a right to payment were deemed a violation of the Due Process Clause, then it must follow that litigants have a constitutional right to declaratory judgments.  This conclusion is not feasible.  Far from being constitutionally required, "for some years the Supreme Court had raised serious doubts about whether an action for a declaratory judgment was [permitted as] a 'case or controversy' within the jurisdiction of the federal courts," Charles Alan Wright, The Law of Federal Courts § 100, at 670 (4th ed. 1983), and "[a]ctions for declaratory judgments represent a comparatively recent development in American jurisprudence," id.

> Although it is possible to find elements of the declaratory judgment in ancient procedures, the remedy as it is now known has been recognized in the United States only since 1919 when legislatures began to adopt statutes similar to those still in effect authorizing the declaratory judgment. . . .
>
> Constitutional doubts deterred adoption of a federal statute authorizing declaratory judgments but when these were quieted by the Supreme Court in 1933, Congress responded promptly by passing the Federal Declaratory Judgment Act in 1934.

Charles Alan Wright et al., 10A Federal Practice and Procedure §2752, at 571-72 (2d ed. 1983) (footnotes omitted).  In light of the history of the Declaratory Judgment Act,[0] it seems that the right to bring a declaratory judgment action is not a

---

[0]The Declaratory Judgment Act is codified at 28 U.S.C. §§2201, 2202.

33

constitutional right, but rather a remedy provided as a matter of grace by the legislature; accordingly, the legislature has the power to abolish that form of remedy.[0]

Since a complete bar of jurisdiction in the administrative claims procedure and courts of law over declaratory judgment actions not asserting a right to payment would comport with due process, National Union and Gulf's argument that they did not receive proper notice from the RTC concerning the submission of claims pursuant to the administrative claims procedure is irrelevant. That is, Congress need not have provided an administrative remedy as an alternative to its barring jurisdiction in courts of law over declaratory judgment actions not asserting a right to payment, so notice of any administrative remedies a fortiori is not required.

In holding that § 1821(d)(13)(D)'s ouster of jurisdiction is not necessarily limited to suits otherwise governed by the administrative claims procedure set out in §1821(d)(3), (d)(5) and (d)(6),[0] we acknowledge that it is possible that in some factual settings the broad bar to jurisdiction contained in § 1821(d)(13)(D) could raise constitutional concerns. Such a situation could arise if the

---

[0]The Supreme Court has characterized the Declaratory Judgment Act as a form of remedy, procedural in nature, rather than as a grant of jurisdiction. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S. Ct. 461, 463 (1937). To this extent, some might find it preferable not to characterize §1821(d)(13)(D) as a jurisdictional bar to declaratory judgment actions, but rather as a limitation to the relief made available by the Declaratory Judgment Act.
[0]See supra note 12.

holder of an action asserting a right to payment were not provided reasonable notice and opportunity to be heard in the administrative claims procedure. In such a setting, application of the broad jurisdictional bar, as stated above, would appear to be unconstitutional. But simply because § 1821(d)(13)(D)'s application in imaginary future cases would be unconstitutional is not a good reason to interpret its jurisdictional bar narrowly, as some courts have suggested.[0] Rather, if and when the RTC seeks to use § 1821(d)(13)(D) unconstitutionally, it would seem that the courts should deem application of §1821(d)(13)(D) unconstitutional <u>as applied</u> in that case, and take jurisdiction over the case.[0]

---

[0] <u>See</u> <u>supra</u> note 8.
[0] Courts routinely declare particular applications of a statute unconstitutional, while leaving the statute intact. <u>E.g.</u>, <u>Tennessee v. Garner</u>, 471 U.S. 1, 11–12, 105 S. Ct. 1694, 1701 (1985) ("The Tennessee statute is unconstitutional insofar as it authorizes the use of deadly force against . . . fleeing suspects. It is not, however, unconstitutional on its face. Where the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. . . . As applied in such circumstances, the Tennessee statute would pass constitutional muster."); <u>see also, e.g.,</u> <u>Bowen v. Kendrick</u>, 487 U.S. 589, 593–622, 108 S. Ct. 2562, 2565–81 (1988) (statute did not violate Establishment Clause on its face, and case remanded to determine whether in particular cases statute was unconstitutional as applied); <u>Boddie v. Connecticut</u>, 401 U.S. 371, 379, 382–83, 91 S. Ct. 780, 787, 788–89 (1971). For a compelling argument that where a constitutionally flawed limitation of jurisdiction is announced by Congress, courts should assume that pertinent general grants of jurisdiction (e.g., 28 U.S.C. §§ 1331, 1343) remain intact, see Lawrence Gene Sager, <u>Foreword: Constitutional Limitations on Congress' Authority to Regulate the Jurisdiction of the Federal Courts</u>, 95 Harv. L. Rev. 17, 22–30 (1981).

We conclude that § 1821(d)(13)(D) bars jurisdiction in any court over National Union and Gulf's declaratory judgment action, regardless of whether the declaratory judgment action could have been submitted to the RTC pursuant to the administrative claims procedure. Moreover, the language contained in § 1821(d)(13)(D) barring "any action seeking a determination of rights" is not limited in its application to actions brought by creditors; it applies to debtors as well, and applies regardless of whether the action is asserting a right to payment. It is therefore irrelevant that National Union and Gulf claim to be potential debtors of the RTC. Accordingly, we will affirm the district court's holding that it lacked jurisdiction to hear National Union and Gulf's declaratory judgment action.[0]

## 3. Application of Section 1821(d)(13)(D) to the Affirmative Defense of Rescission

We now turn to consider whether the district court correctly determined that National Union and Gulf are jurisdictionally barred under § 1821(d)(13)(D) from raising an affirmative defense of rescission to the RTC's counterclaim. We believe that the plain meaning of the language contained in

---

[0] Our holding is in accord with the weight of authority. See, e.g., Carney v. RTC, 19 F.3d 950, 956–58 (5th Cir. 1994) (12 U.C.S. § 1821(j) deprives district courts of certain forms of declaratory relief); Deera Homes, Inc. v. Metrobank for Sav., FSB, 812 F. Supp. 375, 377–78 (E.D.N.Y. 1993) (§ 1821(d)(13)(D) bars action for declaratory relief); Chisim v. RTC, 783 F. Supp. 361, 362–63 (N.D. Ill. 1991) (same). But see In re Continental Fin. Resources, Inc., 154 B.R. 385, 387–89 (D. Mass. 1993) (§ 1821(d)(13)(D) does not divest jurisdiction over debtor's, as opposed to a creditor's, declaratory judgment action).

§1821(d)(13)(D) indicates that the statute does not create a jurisdictional bar to defenses or affirmative defenses which a party seeks to raise in defending against a claim.

> Section 1821(d)(13)(D) limits jurisdiction as follows: Except as otherwise provided in this subsection, no court shall have jurisdiction over--
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the [RTC] as receiver.

12 U.S.C. § 1821(d)(13)(D). The above language bars jurisdiction over four categories of actions: (1) claims for payment from assets of any depository institution for which the RTC has been appointed receiver; (2) actions for payment from assets of such depository institution; (3) actions seeking a determination of rights with respect to assets of such depository institution; and (4) a claim relating to any act or omission of such institution or the RTC as receiver. The issue is whether defenses or affirmative defenses to claims can be said to fall under any of the above four categories.

We think it is plain enough that a defense or an affirmative defense is neither an "action" nor a "claim," but rather is a <u>response</u> to an action or a claim, and that therefore defenses and affirmative defenses do not fall under any of the above four categories of actions. In the interest of clarity, we explain our position in detail.

37

Black's Law Dictionary defines "defense," in relevant part, as follows:

> That which is offered and alleged by the party proceeded against in an action or suit, as a reason in law or fact why the plaintiff should not recover or establish what he seeks.  That which is put forward to diminish plaintiff's cause of action or defeat recovery. . . .
> . . .
> A response to the claims of the other party, setting forth reasons why the claims should not be granted. The defense may be as simple as a flat denial of the other party's factual allegations or may involve entirely new factual allegations.  In the latter situation, the defense is an affirmative defense.

Black's Law Dictionary 419 (6th ed. 1990) (emphasis added).

"Affirmative defense" is defined in more detail as follows:

> In pleading, matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it.  A response to a plaintiff's claim which attacks the plaintiff's [legal] right to bring an action, as opposed to attacking the truth of claim.  Under the Fed. Rules of Civil Procedure, and also under most state Rules, all affirmative defenses must be raised in the responsive pleading (answer) . . . .

Id. at 60 (emphasis added).  We have stated above that an action means "a lawsuit brought in a court."  Id. at 28.  In the above discussion we also stated, borrowing from the Bankruptcy Code, that as used in § 1821(d) the term "claim" essentially means "an action asserting a right to payment."

With the aid of these definitions, it is clear that a defense or affirmative defense is not properly called an "action" or a "claim" but is rather a response to an action or a claim. When a lawyer files a responsive pleading to an action or claim, she does not say that she is bringing an action or filing a

38

claim; instead, she says that she is answering, responding to, or defending against an action. The jurisdictional bar contained in § 1821(d)(13)(D) therefore does not apply to defenses or affirmative defenses.[0]

Of course, if in addition to raising defenses or affirmative defenses to an action or claim, a party also raises counterclaims, such counterclaims would fall under §1821(d)(13)(D)'s jurisdictional bar, because a counterclaim is a "claim." Black's Law Dictionary defines counterclaim as "[a] claim presented by a defendant in opposition to or deduction from the claim of the plaintiff." Black's Law Dictionary 349 (6th ed. 1990). Therefore, unless counterclaims were properly submitted to the administrative claims procedure of FIRREA, they would be subject to the jurisdictional bar of § 1821(d)(13)(D).[0]

Whether an assertion is truly a defense, an affirmative defense, or a counterclaim is a question courts are competent to answer. As discussed above, a claim (or a counterclaim) is essentially an action which asserts a right to payment. Courts

---

[0]There is a conflict among courts concerning whether affirmative defenses are jurisdictionally barred by §1821(d)(13)(D). See cases cited in RTC v. Schonacher, 844 F. Supp. 689, 692-94 (D. Kan. 1994). The only court of appeals to consider this issue has held that an affirmative defense of mutual mistake is not barred by § 1821(d)(13)(D). RTC v. Midwest Fed. Sav. Bank of Minot, 4 F.3d 1490, 1494-97 (9th Cir. 1993). We agree with the outcome of Midwest Federal, but, as suggested in supra typescript at 20-37 and note 8, our analysis does not mirror the reasoning of the Court of Appeals for the Ninth Circuit.
[0]It appears that there is a forming consensus in the courts that counterclaims are jurisdictionally barred by §1821(d)(13)(D), unless administrative remedies are exhausted. See cases cited in Schonacher, 844 F. Supp. at 692-94.

39

should not allow parties to avoid the procedural bar of §1821(d)(13)(D) by simply labelling what is actually a counterclaim as a defense or affirmative defense.

We will assume that under the state and/or federal law which ultimately will govern this case, a defense of rescission is an "affirmative defense".[0] The district court has characterized rescission as an affirmative defense, and we accept that characterization. National Union and Gulf are therefore not barred by § 1821(d)(13)(D) from raising rescission as an affirmative defense to the RTC's counterclaim.

Our interpretation of § 1821(d)(13)(D) is based on the plain meaning of the language of that section. However, we point out that even if it could be argued that the jurisdictional bar of § 1821(d)(13)(D) could be fairly interpreted to bar jurisdiction over defenses or affirmative defenses, we would not adopt this position. This is because interpreting the jurisdictional bar in such a manner would, in a substantial number of cases, and in this case in particular, result in an unconstitutional deprivation of due process. Property which one stands to lose as a result of a lawsuit is a property interest protected by the Due Process Clause, Logan, 455 U.S. at 428–30, 102 S. Ct. at 1154, and the "Due Process Clause . . . prevent[s] . . . denying potential litigants use of established adjudicatory

---

[0]We have found authority for the proposition that rescission is an affirmative defense, and none to the contrary. E.g., Intertech Assoc., Inc. v. City of Paterson, 604 A.2d 628, 632 (N.J. Super. Ct. App. Div. 1992); Falcione v. Cornell Sch. Dist., 557 A.2d 425, 428 (Pa. Super. Ct. 1989).

procedures, when such an action would be 'the equivalent of denying them an opportunity to be heard upon their claimed right[s],'" id. at 429-30, 102 S. Ct. at 1154.  If parties were barred from presenting defenses and affirmative defenses to claims which have been filed against them, they would not only be unconstitutionally deprived of their opportunity to be heard, but they would invariably lose on the merits of the claims brought against them.  Such a serious deprivation of property without due process of law cannot be countenanced in our constitutional system.[0]  "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the [c]ourt will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575, 108 S. Ct. 1392, 1397 (1988). Especially in light of the serious due process concerns which would unavoidably arise were we to interpret the jurisdictional bar of § 1821(d)(13)(D) as applying to defenses and affirmative defenses, we reject such an interpretation.

It may be argued that barring defenses and affirmative defenses in court would not be unconstitutional because under FIRREA parties could always file potential defenses and affirmative defenses in the administrative claims procedure provided for in § 1821(d)(3), (d)(5) and (d)(6).  But this

[0]In contrast, our holding above that Congress may divest the courts of jurisdiction over declaratory judgment actions would result only in a delay in adjudication, not a permanent deprivation of property without an opportunity to be heard.

41

suggestion is not tenable.  For one thing, many of the parties who would be raising defenses to RTC-initiated lawsuits would not be creditors of the thrift institution in receivership and so would not receive notice of the time within which they would be required to present information to the administrative claims procedure, as provided for in § 1821(d)(3).  Again, this would raise due process concerns.  Moreover, even if parties received notice that they must submit potential defenses or affirmative defenses to the administrative claims procedure, such parties would often find it difficult if not impossible to do so.  Since a party cannot know what her defense is until she hears the claim leveled against her, it seems that it would be nearly impossible for a party to submit future hypothetical defenses to the administrative claims procedure--defenses to lawsuits which may not yet have brought against her or which may never be brought at all.  We agree with the court in RTC v. Conner, 817 F. Supp. 98 (W.D. Okla. 1993), "that even if the plain language of §1821(d)(13)(D) were read or understood to include affirmative defenses, an exception to the plain meaning rule of statutory construction would apply because such a literal application of the statute . . . would lead to the patently absurd consequence of requiring presentment and proof to the RTC of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC," id. at 102 (internal quotations and citations omitted).

For the above reasons, we conclude that §1821(d)(13)(D) does not bar National Union or Gulf from raising any defense or

affirmative defense to the RTC's counterclaim.  We will therefore reverse the district court's holding that National Union and Gulf were jurisdictionally barred from raising rescission as an affirmative defense.

CONCLUSION

We hold that the jurisdictional bar contained in §1821(d)(13)(D) deprives the district court of jurisdiction to hear National Union and Gulf's declaratory judgment action for rescission of the insurance polices they issued, but that the jurisdictional bar does not apply to the same theory of rescission when raised as an affirmative defense.  At first blush, it might seem hypertechnical for us to interpret §1821(d)(13)(D) as making a distinction between a rescission theory when asserted in a declaratory judgment action, and the same theory of rescission when raised as an affirmative defense, and to further hold that jurisdiction in the district court does not exist for the former, but exists for the latter.

Yet there is a principled and common sense rationale for this distinction, which is evidenced by the text of FIRREA and its legislative history:  One cannot hale the RTC into court to obtain only a declaration of rights; rather, the RTC is to be left alone to preserve the assets of the thrift institution in receivership and efficiently process claims for payment for the institution's assets.  However, if the RTC brings an action against a party, that party has a right to raise defenses in that action.  This rationale is both sound and just.

43

We will affirm the district court's holding that it does not have jurisdiction to hear National Union and Gulf's declaratory judgment action. However, we will reverse the district court's holding that the jurisdictional bar contained in § 1821(d)(13)(D) prevents National Union and Gulf from raising the affirmative defense of rescission to the RTC's counterclaim. We will remand the case to the district court for proceedings consistent with this opinion.