**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**June 24, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

ABEL RAMIREZ; BERENICE RESENDIZ;
ALICIA AMAYA CARMONA; CARLOS
RAMIREZ; EDUARDO RAMIREZ; J.R.
(6); J.R. (4); J.R. (2); K.F.,

      Plaintiffs - Appellants,

v.

JORDAN REDDISH; DANIEL FERRON;
JARED GOLDING; CASEY NELSON;
JASON ROOTHOFF; KARSON WELCH;
DERRYL SPENCER; WALTER
BOCKHOLT; NICHOLAS CHOURNOS;
STEVEN DOUGLAS; CHARLIE
SANDNESS; TYLER WEBSTER; UNITED
STATES OF AMERICA,

      Defendants - Appellees.

No. 22-4079

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:18-CV-00176-LAB)**
_____

Submitted on the briefs:*

Bradley S. Pauley, Peder K. Batalden and Rebecca G. Powell of Horvitz & Levy, LLP,
Burbank, California, and Valentina De Fex and John M. Mejia of ACLU of Utah
Foundation, Inc., Salt Lake City, Utah, for Plaintiffs-Appellants.

_____

* After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument.

Trina A. Higgins, United States Attorney, Brian M. Boynton, Principal Deputy Assistant Attorney General, Barbara L. Herwig, and Edward Himmelfarb, Attorneys, Appellate Staff Civil Division, Department of Justice, Washington, D.C., and James G. Bartolotto and David Inkeles, Attorneys, Torts Branch, Civil Division, Department of Justice, Washington, D.C., for Federal Defendants-Appellees.

Joshua D. Davidson and Peggy E. Stone, Assistant Utah Solicitors General, Utah Attorney General's Office, Salt Lake City, Utah, for Defendants-Appellees Daniel Ferron and Jason Roothoff.

_____

Before **TYMKOVICH**, **BRISCOE**, and **BACHARACH**, Circuit Judges.

_____

**TYMKOVICH**, Circuit Judge.

_____

This case arises from a United States Immigration and Customs Enforcement (ICE) raid at Abel Ramirez-Peñaloza's family home in Heber City, Utah.  Mr. Ramirez- Peñaloza came to ICE's attention after pleading guilty to driving under the influence in Utah state court.  Subsequently, a federal grand jury indicted him for illegally re-entering the United States after having been previously removed, in violation of 8 U.S.C. § 1326.

Immigration officials sought unsuccessfully to arrest him at his home.  During two searches of Mr. Ramirez-Peñaloza's home, the officials detained and questioned members of his family living in the same apartment complex.

The plaintiffs in this action are some of Mr. Ramirez-Peñaloza's family members whom the federal agents detained during the searches.  They filed claims against the United States and the agents alleging a variety of Fourth Amendment and

2

state law claims. The district court dismissed most of the plaintiffs' claims, but allowed three claims to go to trial, where a jury returned a verdict in favor of the officers. In this appeal, the plaintiffs challenge the district court's grant of summary judgment in favor of the officers on the excessive use of force and false arrest claims.

We affirm. The dismissed claims are barred by the Federal Tort Claims Act's (FTCA) judgment bar. The FTCA judgment bar precludes suits against federal employees after the entry of final judgment on a claim against the United States for an analogous cause of action. Since the district court entered final judgment in favor of the United States on the plaintiffs' analogous FTCA claims, the claims against the individual defendants are barred.

## I. Background

### A. Factual background

The record at the close of discovery supported the following narrative.

After Mr. Ramirez- Peñaloza was indicted for unlawful entry into the United States, ICE agent Jordan Reddish and Deputy U.S. Marshal Casey Nelson sought to arrest him at his apartment. Conversations with a leasing office employee and maintenance worker led them to believe that Mr. Ramirez-Peñaloza lived in Apartment A103 or Apartment A104 and that he was then in the apartment complex.

Mr. Reddish and Mr. Nelson called for backup and returned with additional law enforcement officers. They went to Apartment A103 and knocked, but nobody answered. Alicia Amaya Carmona, Mr. Ramirez-Peñaloza's wife, was inside with

3

her grandchildren.  The officers ordered Ms. Amaya Carmona and her grandchildren to leave the apartment so that they could perform a sweep.  They denied Ms. Amaya Carmona's request that her grandchildren be allowed to put on shoes and suitable clothing.  The officers permitted the children to return to the apartment some 20-30 minutes later.  In the meantime, they questioned Ms. Amaya Carmona about Mr. Ramirez-Peñaloza's whereabouts and her own immigration status.  They also obtained a key to Apartment A104 from the building management and searched that apartment but did not encounter Mr. Ramirez- Peñaloza nor any other occupants.

Meanwhile, Ms. Amaya Carmona called her son Eduardo Ramirez, who lived in a nearby apartment.  When Mr. Eduardo Ramirez approached the group, the officers detained him to ask him for an ID card.  Mr. Eduardo Ramirez misunderstood them to be asking about whether he had a green card and replied that he did not.  The officers then handcuffed him and searched his pockets and wallet. Later, Ms. Amaya Carmona's other sons, Carlos Ramirez and Abel Ramirez Jr., arrived, as did Mr. Carlos Ramirez's wife Berenice Resendiz.  The officers left an hour later.  Before they left, the officers arrested Ms. Amaya Carmona for illegal entry into the United States and took her into custody.

The officers returned to Apartment A103 that night and breached the door with a battering ram.  This time, Ms. Resendiz was home with her children.  The officers ordered them outside.  They then knocked on the door of Apartment A104.  Mr. Abel Ramirez Jr. opened the door, and the officers ordered him and his daughter outside. The officers detained Ms. Resendiz, Mr. Abel Ramirez Jr., and the children outside

4

for fifteen minutes during the search and interrogated Ms. Resendiz and Mr. Carlos Ramirez on the whereabouts of Mr. Ramirez-Peñaloza.

## B. Procedural background

The plaintiffs sued the individual federal defendants for violations of the Fourth Amendment under *Bivens* and for civil conspiracy in violation of 42 U.S.C. § 1985(3). They also sued the United States under the FTCA for several state constitutional torts, including for violation of two provisions of the Utah Constitution that prohibit unreasonable seizures and "unnecessary vigor" in detention. *See* UTAH CONST. ART. I §§ 9, 14.

The district court granted summary judgment to the defendants with respect to the plaintiffs' conspiracy claim, the FTCA claims, and most of the Fourth Amendment claims. In addressing the Utah constitutional claims, the district court noted that "the FTCA expressly waives sovereign immunity for the United States' liability for state law 'tort claims[] in the same manner and to the same extent as a private individual under like circumstances.'" Order at 58 (citing 28 U.S.C. § 2674). It reasoned that "the two state constitutional provisions Plaintiffs invoke here are aimed at state actors (e.g. public employees), not private individuals," so the plaintiffs "have not shown that a private individual would be liable under Utah law for the two state constitutional violations Plaintiffs assert here against the United States." *Id.* at 59. This implied, according to the district court, that the "Plaintiffs . . . have failed to establish that the United States has waived its sovereign immunity

from liability," and it dismissed the state claims without prejudice for lack of subject matter jurisdiction. *Id.* at 61.

The plaintiffs' surviving federal claims of unlawful entry and unconstitutional search in violation of the Fourth Amendment all lost at trial. The plaintiffs now appeal the district court's grant of summary judgment in favor of the defendants on their Fourth Amendment claims for excessive use of force and unlawful detention.

## II. Analysis

The plaintiffs contend that the district court erred in granting summary judgment in favor of the defendants on their Fourth Amendment excessive use of force and unlawful detention claims since the federal agents' use of force and detention violated clearly established law. We need not reach these arguments because the plaintiffs' individual claims against the officers are barred by the FTCA judgment bar.

Enacted in 1946, the Federal Tort Claims Act governs the United States' liability for torts committed by its employees. "Before 1946, a plaintiff could sue a federal employee directly for damages, but sovereign immunity barred suits against the United States, even if a similarly situated private employer would be liable under principles of vicarious liability." *Brownback v. King*, 592 U.S. 209, 211 (2021). Because of this immunity, the government would frequently "provide counsel to defendant employees or indemnify them," and "Congress passed private bills that awarded compensation to persons injured by Government employees." *Id.* To streamline this process, the FTCA waives "sovereign immunity of the United States

for certain torts committed by federal employees acting within the scope of their employment." *Id.* at 212 (internal quotation marks omitted). Instead, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. The FTCA waives sovereign immunity, permitting tort claimants to directly sue the United States for damages instead of first suing its employees and waiting for the United States to indemnify those employees.

But the FTCA's waiver of sovereign immunity comes with strings attached. A judgment under the act "shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. "While waiving sovereign immunity so parties can sue the United States directly for harms caused by its employees, the FTCA made it more difficult to sue the employees themselves by adding a judgment bar provision." *Brownback*, 592 U.S. at 212 (2021). In other words, the FTCA provides plaintiffs with an avenue to sue the United States for the harms caused by its employees, but suing the United States under the FTCA may bar their ability to sue federal employees for related harms.

In this case, the plaintiffs availed themselves of the FTCA's sovereign immunity waiver to sue the United States for violations of the Utah Constitution. The district court entered summary judgment in favor of the United States on those

claims and entered final judgment after trial.  Thus, the question is whether the FTCA

bar applies to the claims against the federal employees.  We conclude that it does.[1]

### A.  The FTCA's Same Subject Matter Requirement

The FTCA judgment bar applies only to claims against the federal employees

"by reason of the same subject matter" as an FTCA claim.  28 U.S.C. § 2676.  We

have explained that "by reason of the same subject matter" in § 2676 means "arising

out of the same actions, transactions, or occurrences."  *Estate of Trentadue v. United

States*, 397 F.3d 840, 858 (10th Cir. 2005) (citing *Serra v. Pichardo*, 786 F.3d 237,

239-40 (6th Cir. 1986)).  In other words, the FTCA does not shield federal employees

from all claims, but only bars claims against federal employees arising from the same

incident.

*Trentadue* is illustrative.  In that case, the estate of an inmate who died in

prison alleged that the prison employee committed constitutional violations resulting

in the inmate's death.  Among other claims, the estate filed a *Bivens* action against

the prison employee for civil rights violations and sued the United States under the

FTCA for intentional infliction of emotional distress—two unrelated theories of

recovery.  A jury found the individual defendant liable under *Bivens*, and the district

---

[1] Although the district court entered judgment on the plaintiffs' Utah
Constitution claims "without prejudice," Aplt. App., Vol. 3 at 637, the plaintiffs do
not challenge application of the FTCA judgment bar on this basis.  We therefore
assume without deciding that the "without prejudice" dismissal of the Utah
Constitution claims was sufficient to trigger the judgment bar.  Even so, the judgment
was sufficient to trigger the FTCA under *Brownback* since it "hinged on a
quintessential merits decision: whether the undisputed facts established all the
elements of [Ramirez's] FTCA claims."  *Brownback*, 592 U.S. at 216.

court found the government liable under the FTCA after a bench trial. On appeal, we reasoned that since both claims "involved the same subject matter . . . the alleged misconduct of prison officials . . . in responding to [the prisoner's] death," "the two claims arose out of the same 'actions, transactions, or occurrences' for the purposes of § 2676." *Id.* at 859. As a result, the judgment entered against the United States barred a suit against the federal employee for the same incident.

That same logic applies here. The plaintiffs' FTCA claims against the United States for the Utah constitution violations and their claims against the federal employees for the Fourth Amendment violation arise from the same subject matter: the raid on the plaintiffs' apartments and subsequent detentions. Since the district court entered final judgment on the FTCA claims, the plaintiffs' claims against the officers are now barred.

## B.  The Same Litigation Requirement

### 1.  Application of the FTCA to Claims Within the Same Complaint

The plaintiffs do not contend that their FTCA and Fourth Amendment claims correspond to a different subject matter. Instead, they argue that the FTCA bars only *future suits* against federal employees, not *alternative claims* raised within the same complaint. Therefore, they argue that the FTCA's judgment bar only prevents the plaintiffs from filing subsequent suits against federal employees arising from the same subject matter, but that it has no effect on their ongoing claims against the federal agents.

9

*Trentadue* precludes this argument. In analyzing the "same subject matter" claim raised there, we reasoned that "[a]lthough the language of the statute does not speak to situations where FTCA and non-FTCA claims are tried together in the same action, we interpret [the FTCA judgment bar] to apply to cases like this," where a plaintiff filed FTCA and Fourth Amendment claims in the same suit. 397 F.3d at 859. We are bound by on-point Tenth Circuit case law unless overruled by an en banc decision or "indisputably and pellucidly abrogated" by an intervening Supreme Court decision. *Vincent v. Garland*, 80 F.4th 1197, 1200 (10th Cir. 2023).

### 2. The Supreme Court's Claim Preclusion Framework

Recognizing this obstacle, plaintiffs argue that our *Trentadue* analysis is no longer good law. They contend that subsequent Supreme Court precedents align the FTCA judgment bar analysis with res judicata principles and therefore limit its application to future suits. In other words, the FTCA subject bar would bar a subsequent suit against federal officials but would not apply to federal officials who were co-defendants in a suit against the United States.

To support this interpretation, the plaintiffs point to a series of post-*Trentadue* Supreme Court decisions, starting with *Will v. Hallock*, 546 U.S. 345, 347-48 (2006). In that case, the plaintiff filed parallel suits against the United States under the FTCA and customs agents under *Bivens* to recover damages for the destruction of her business's computers. When the district court dismissed the FTCA claim on the basis that the claim fell within an exception to the FTCA's sovereign immunity waiver, the customs agents moved to dismiss pursuant to the FTCA's judgment bar. The district

10

court denied their motion, and the Supreme Court granted certiorari to determine whether an order denying a motion to dismiss under the FTCA's judgment bar was immediately appealable under the collateral order doctrine. In concluding that the collateral order doctrine did not apply, the Supreme Court distinguished the FTCA judgment bar from the doctrine of qualified immunity, which permits collateral appeal. The Court reasoned that "[t]he closer analogy to the judgment bar . . . is not immunity but the defense of claim preclusion, or res judicata," which does not permit collateral appeal. *Id.* at 354. "Although the statutory judgment bar is arguably broader than traditional res judicata, it functions in much the same way, with both rules depending on a prior judgment as a condition precedent and neither reflecting a policy that a defendant should be scot free of any liability." *Id.* The Court concluded that collateral appeal was improper and that it therefore lacked appellate jurisdiction. The collateral appeal issue at stake in *Will* does not figure in this case, but *Will* remains relevant since it established for the first time a res judicata framework for analyzing FTCA claims.

The Supreme Court returned to its res judicata analogy a decade later in *Simmons v. Himmenreich*, 578 U.S. 621 (2016). In that case, the plaintiff pursued negligence claims against the United States under the FTCA and prison officials under *Bivens* after he was severely beaten by other inmates. The district court dismissed the FTCA claims against the United States for falling under the discretionary function exception to the FTCA. The issue on appeal was whether the judgment bar applied to the *Bivens* claims against the prison officials. The Supreme

11

Court concluded that the FTCA judgment bar did not apply since the FTCA claim was dismissed for falling in an exception to the waiver of sovereign immunity. Drawing on its claim preclusion analogy, the Court explained that "claim preclusion principles would not foreclose a second suit where the first suit was dismissed under the 'Exceptions' section," since "[d]ismissals for 'personal immunity'—defenses that can be asserted by one party but not others—do not have claim-preclusive effect." *Id.* at 630 n. 5 (citing RESTATEMENT OF JUDGMENTS § 96, Comment *g* (AM. L. INST. 1942); *and* RESTATEMENT (SECOND) OF JUDGMENTS § 51(1)(b) and Comment *c* (AM. L. INST. 1982)). *Simmons* does not control here, since the district court did not dismiss the Utah constitution claims for falling in an exception to the sovereign immunity waiver, but the case is relevant to our analysis since it reaffirmed res judicata as the appropriate analytical framework for the FTCA judgment bar.

Finally, the plaintiffs point to the Supreme Court decision in *Brownback*, where the plaintiff sued the United States under the FTCA, alleging that its agents committed six torts under Michigan law, and those same agents for Fourth Amendment violations under *Bivens*. The question was whether an order dismissing FTCA claims for lack of subject matter jurisdiction was "on the merits," such that the FTCA judgment bar applied to the claims against the agents. The Supreme Court again referred to its claim preclusion framework by noting that "[t]o trigger the doctrine of res judicata or claim preclusion a judgment must be on the merits." *Brownback*, 592 U.S. at 215 (internal brackets and quotation marks omitted). The

same logic applied to the FTCA, so the Court found that dismissal of FTCA claims for lack of jurisdiction triggered the judgment bar when it reached the case's merits.

Justice Sotomayor concurred in *Brownback* to express her view on a matter not reached by the majority: "whether an order resolving the merits of an FTCA claim precludes other claims arising out of the same subject matter in the same suit." *Id.* at 219 (Sotomayor, J., concurring). Writing only for herself, she concluded that it did not, and the plaintiffs ask us to adopt her position.

### 3. Plaintiffs' Proposal

The plaintiffs posit that the Supreme Court's common law claim preclusion framework forbids application of the judgment bar to claims within the same suit. Aplt. Br. at 58-60; Reply Br. at 26-29. *See Brownback*, 592 U.S. at 219-23 (Sotomayor, J., concurring); *see also King v. United States*, 49 F.4th 991 (6th Cir. 2022), *cert denied*, *King v. Brownback*, No. 22-912 (Sotomayor, J., statement) (October 30, 2023). They contend that the judgment bar only applies after the conclusion of the case, since "judgment" under the FTCA "refers to a final determination of a suit" rather than "decisions disposing of only *some* of the claims in a lawsuit." Aplt. Br. at 59 (citing *Brownback*, 592 U.S. at 220 (Sotomayor, J., concurring)) (emphasis in original). And they maintain that the judgment bar cannot apply to other claims within a suit, since the FTCA bars "actions," and an "action" under the FTCA refers to an entire suit, rather than "individual demands for relief within a lawsuit." *Id.* This interpretation, according to the plaintiffs, is consistent

with the Supreme Court's claim preclusion framework, since "[c]laim preclusion bars only successive *suits*, not alternative claims in the same action." Reply Br. at 27.

But notwithstanding Justice Sotomayor's concurrence, the Supreme Court in *Brownback* expressly declined to address whether the FTCA judgment bar applies to alternative claims within the same suit. 592 U.S. at 215 n.4 (declining to address whether the FTCA judgment bar applies to a dismissal of alternative claims raised in the same lawsuit because the court of appeals did not address that argument). For the following reasons, we remain convinced that our interpretation of the FTCA is correct: the judgment bar applies to alternative claims within the same action.

### 4. Judgment in the Same Suit

We are unpersuaded by the plaintiffs' theory that a "judgment" in the FTCA context refers to the final resolution of all claims in a suit. The Federal Rules of Civil Procedure suggest otherwise and indeed explicitly contemplate entering judgment on individual claims within a suit. For example, Rule 54(b) permits "direct entry of a final judgment as to one or more . . . *claims* or parties." Fed. R. Civ. P. 54(b) (emphasis added). "Rule 54(b) of the Federal Rules of Civil Procedure is a procedural rule of general applicability," and the plaintiffs have not shown why the FTCA requires an extraordinary definition of "judgment." *Nat'l Union Fire Ins. Co. of Pittsburgh v. City Sav., F.S.B.*, 28 F.3d 376, 387 n. 10 (3d Cir. 1994). Elsewhere in the Federal Rules, Rule 50 provides that a court may "grant a motion for judgment as a matter of law against the party on a *claim* or defense," Fed. R. Civ. P. 50(a)(1)(B) (emphasis added), while Rule 56 permits a party "to move for summary

14

judgment, identifying each *claim* or defense—or the part of each *claim* or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) (emphasis added). Under the Federal Rules of Civil Procedure, a court may enter multiple judgments in a case against different parties and with respect to different claims.

### 5.  *The Meaning of "Action"*

While we agree with the plaintiffs that the FTCA bars "actions" rather than "claims," we disagree that the bar applies only to separate or subsequent actions. A judgment under the FTCA "constitute[s] a complete bar to *any* action by the claimant" against federal employees. 28 U.S.C. § 2676 (emphasis added). The plaintiffs argue that the statute's reference to "actions" rather than "claims" means that it has no effect on alternative claims in an ongoing action. We disagree, and we conclude that in 28 U.S.C. § 2676, "any action" refers to ongoing as well as future actions.

The Supreme Court's claim preclusion framework guides us here. As a practical matter, claim preclusion does not attach to alternative claims within the same complaint because the doctrine applies to "successive litigation of the very same claim by the same parties." *Whole Women's Health v. Hellerstedt*, 579 U.S. 582, 599 (2016) (internal quotation marks omitted). A judgment against the United States does not have claim preclusive effect against its employees, since "[t]he general rule is that a prior judgment will bar the 'parties' to the earlier lawsuit, 'and those in privity with them,' from relitigating the cause of action." *Nevada v. United States*, 463 U.S. 110, 135 (1983) (citing *Cromwell v. County of Sac*, 94 U.S. 351, 352

(1876)).  "Government employees in their *individual* capacities are not in privity with their government employer."  *Willner v. Budig*, 848 F.2d 1032, 1034 n.4 (10th Cir. 1988) (emphasis in original).  If a court enters judgment on a given claim, the judgment does not have preclusive effect on other claims within that suit—because the other claims are, by definition, distinct.

These practical considerations do not apply in the FTCA context, since the judgment bar by its nature extends to a party—the federal employee—who was not a party to the previously resolved claim.  28 U.S.C. § 2676; *see Willner*, 848 F.2d at 1034 n. 4 (holding that government employees sued in their individual capacity are not in privity with their government employer).  But the judgment bar requires courts to effect a legal metamorphosis by treating the employee as if he were a party to previously resolved claim.

Applying the rationales of claim preclusion to the FTCA context, we see no reason why the judgment bar should not apply to alternative claims within the same action.  Claim preclusion stems from "the maxim that the interest of the state requires that there be an end to litigation."  *Reed v. Allen*, 286 U.S. 191, 198-99 (1932).  It ensures finality by providing that "a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies."  *Montana v. United States*, 440 U.S. 147, 153 (1979) (cleaned up).  The policy rationales of avoiding duplicative litigation apply irrespective of whether the previous adjudication was part of the same proceeding or a different proceeding.

16

In short, the plaintiffs' suit-based interpretation of the FTCA judgment bar is unsupported by the statute and inconsistent with the Supreme Court's claim preclusion framework for the FTCA.  Thus, we remain confident in our previous holding that the FTCA judgment bar applies to other claims within the same suit. *Trentadue*, 397 F.3d at 859.

## III. Conclusion

We affirm the district court's grant of summary judgment in favor of the defendants.

No. 22-4079, *Ramirez v. Reddish*
**BRISCOE**, Circuit Judge, concurring.

I respectfully disagree with the majority's decision to affirm the district court's judgment on the basis of the Federal Tort Claims Act's (FTCA's) judgment bar. But, because I conclude that the district court did not err in granting summary judgment in favor of defendants as to the plaintiffs' *Bivens* claims for unreasonable seizures and excessive use of force, I concur in the judgment.

I

Plaintiffs asserted two groups of claims: a group of *Bivens* claims against the individual defendants for alleged violations of plaintiffs' Fourth Amendment rights, and a group of claims against the United States under the FTCA. Only two of those claims, Counts 32 and 33, are relevant here. Counts 32 and 33 alleged U.S. Marshals Task Force members seeking to arrest Abel Ramirez, Sr. (Abel Sr.) violated provisions of the Utah Constitution by unreasonable searches and seizures, and by effecting arrests and detentions "with unnecessary rigor." *See* UTAH CONST. ART. I §§ 9, 14.

All the defendants moved for summary judgment. The district court granted in part, and denied in part, the individual defendants' motion. On the *Bivens* claims alleging unreasonable seizure and excessive force, the court granted summary judgment to the individual defendants on qualified immunity grounds. The *Bivens* claims alleging unlawful entry and unconstitutional search were ultimately rejected by a jury after trial. In ruling on the United States' summary judgment motion as to the FTCA claims, the district court concluded that plaintiffs "failed to establish that the United States, through

the FTCA, ha[d] waived its sovereign immunity from the[] state law claims," and therefore dismissed the FTCA claims "without prejudice for lack of subject matter jurisdiction." Aplt. App. vol. III at 579.

Following the district court's summary judgment ruling, the United States moved under Federal Rule of Civil Procedure 54(b) for the immediate entry of final judgment on the FTCA claims. The United States argued that the immediate entry of final judgment on the FTCA claims was in the interests of efficient administration of justice because the FTCA's judgment bar, 28 U.S.C. § 2676, would preclude plaintiffs' recovery against the individual defendants on the remaining *Bivens* claims. The district court denied the United States' motion, concluding that its dismissal of plaintiffs' FTCA claims without prejudice for lack of subject matter jurisdiction did not trigger the FTCA's judgment bar and did not preclude plaintiffs' possible recovery against the individual defendants on the remaining *Bivens* claims. The district court distinguished *Estate of Trentadue v. United States*, 397 F.3d 840 (10th Cir. 2005), and other cases where the judgment bar was "triggered by entry of judgment on the merits of an FTCA claim, either after trial or the entry of summary judgment on the merits of the FTCA claim, or because the FTCA claim was dismissed with prejudice . . . ." Aplt. App. vol. III at 683–84.

Plaintiffs now appeal the district court's grant of summary judgment on qualified immunity grounds on their *Bivens* claims alleging unreasonable seizure and excessive force. Plaintiffs do not seek review of the jury verdict rejecting their *Bivens* claims for unlawful entry and unconstitutional search, or the district court's dismissal without prejudice of their FTCA claims against the United States. Nor do the federal appellees

2

cross appeal the district court's denial of their Rule 54(b) motion asserting the FTCA judgment bar. With the appeal in this posture, the majority proceeds to resolve this appeal by effectively reversing the district court's decision on the FTCA judgment bar issue and concluding the FTCA judgment bar forecloses plaintiffs' *Bivens* claims.

To be sure, the federal appellees argue in their appellate response brief that the FTCA's judgment bar forecloses plaintiffs' *Bivens* claims. But, if we were to agree with the federal appellees on this point, we would necessarily have to either revise the district court's judgment on the plaintiffs' FTCA claims to be with prejudice or remand the case to the district court with directions to do the same. Either way, we would be expanding the rights of the federal appellees. All of which means that the federal appellees, to the extent they now wish to challenge the district court's ruling on the FTCA judgment bar issue, should have filed a cross-appeal and that their failure to do so prevents us from considering the FTCA judgment bar issue.

Had the district court dismissed the plaintiffs' FTCA claims with prejudice, I would be inclined to agree with the majority that, in light of *Trentadue*, the dismissal would implicate the FTCA's judgment bar.[1] But, because the district court's dismissal of the FTCA claims was without prejudice, I fail to see how that can trigger the FTCA's

---

[1] As Justice Sotomayor has twice noted, the Supreme Court has not decided whether an order resolving the merits of an FTCA claim precludes other claims arising out of the same subject matter in the same suit. *King v. Brownback*, 144 S. Ct. 10, 11 (2023) (Sotomayor, J., statement respecting the denial of certiorari) ("The text, purpose, and effect of the FTCA, as well as principles of common-law claim preclusion, all indicate that the judgment bar might not apply to claims brought in the same lawsuit."); *Brownback v. King*, 141 S. Ct. 740, 750 (2021) (Sotomayor, J., concurring).

3

judgment bar. *See generally Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) (discussing the meaning of "dismissed without prejudice" and concluding it is the opposite of an "adjudication on the merits."). Surely Congress did not intend for the FTCA's judgment bar to apply when a district court dismisses an FTCA claim without prejudice. And, indeed, I cannot find any cases applying the FTCA's judgment bar where, as here, the dismissal of the FTCA claims was without prejudice.

Curiously, the majority evades these procedural hurdles and controlling case law by simply "assum[ing] without deciding that the 'without prejudice' dismissal" of the plaintiffs' FTCA claims "was sufficient to trigger the [FTCA's] judgment bar." Op. at 8 n.1. As I have noted, this conclusion amounts to an effective reversal of the district court's denial of the United States' Rule 54(b) motion. Moreover, there is no case law supporting such an approach, and the approach is essentially contrary to the underlying purpose of the FTCA's judgment bar. For all these reasons, I cannot join in the majority's decision.

## II

I therefore proceed to consider the merits of the plaintiffs' challenges to the district court's grant of summary judgment in favor of the individual defendants, on qualified immunity grounds, as to the plaintiffs' *Bivens* claims for unreasonable seizures and excessive use of force.

4

A

"We review de novo the district court's order granting summary judgment to the individual defendants on qualified-immunity grounds." *Gutteridge v. Oklahoma*, 878 F.3d 1233, 1238 (10th Cir. 2018). "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Whether or not the factual circumstances are novel, for a right to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Cortez v. McCauley*, 478 F.3d 1108, 1114–15 (10th Cir. 2007) (quoting *Medina v. City & Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).

"When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Gutteridge*, 878 F.3d at 1238 (quoting *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). The plaintiff must show "(1) a reasonable jury could find facts supporting a violation of a constitutional right that (2) was clearly established at the time of the Defendants' conduct." *Est. of Booker v. Gomez*, 745 F.3d 405, 418 (10th Cir. 2014); *see also Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1043 (10th Cir. 2022) (explaining that qualified immunity's first prong asks whether the plaintiff "has raised a genuine dispute of material fact such that a reasonable jury could find a violation of . . . constitutional rights"). "If, and only if, the plaintiff meets this two-part test does a

5

defendant then bear the traditional burden of the movant for summary judgment—showing 'that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.'" *Gutteridge*, 878 F.3d at 1238 (quoting *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000)).

We have "discretion to address the two qualified-immunity prongs in whatever order is appropriate under the circumstances." *Toevs v. Reid*, 685 F.3d 903, 910 (10th Cir. 2012). In conducting the analysis, we "rely on the district court's description of the facts, taken in the light most favorable to Plaintiff, and do not reevaluate the district court's conclusion that the . . . record is sufficient to prove these facts." *Perea v. Baca*, 817 F.3d 1198, 1200–01 (10th Cir. 2016) (quoting *Al–Turki v. Robinson*, 762 F.3d 1188, 1191 (10th Cir. 2014)).

In a lawsuit involving multiple defendants, a plaintiff must "'identify *specific* actions taken by *particular* defendants' [that could form] a viable § 1983 or *Bivens* claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998)). Allegations made against a group of defendants as a collective are insufficient. *Id.* at 1225. A plaintiff must plead that a government official, "through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A plaintiff can, however, establish an official's "direct, personal participation" by showing that the official failed to intervene in a constitutional violation. *Cf. Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003) (abrogated on other grounds by *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008). For

6

law enforcement officers, who "have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence," the officer must have "observe[d] or ha[d] reason to know" of a constitutional violation and have had a "realistic opportunity to intervene." *Vondrak*, 535 F.3d at 1210 (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

B

I turn first to the plaintiffs' unreasonable seizure claims. The Fourth Amendment prohibits unreasonable seizures by law enforcement officers. U.S. CONST. amend. IV; *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017). A seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968). The "crucial test" for determining whether an officer's encounter with an individual is consensual or a seizure "is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that [they were] not at liberty to ignore the police presence and go about [their] business.'" *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

Absent submission, a seizure by force "lasts only as long as the application of force." *Torres v. Madrid*, 592 U.S. 306, 318 (2021). A seizure by control, on the other hand, "involves either voluntary submission to a show of authority or the termination of freedom of movement." *Id.* at 322. An individual can make no attempt to leave but still

7

be seized for purposes of the Fourth Amendment. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

There are "[n]o per se or absolute rules [that] govern this inquiry." *United States v. Hill*, 199 F.3d 1143, 1147 (1999). A court must instead look at the totality of the circumstances. *United States v. Little*, 18 F.3d 1499, 1503 (10th Cir. 1994). The Tenth Circuit has, in addition, identified the following non-exhaustive list of factors as relevant:

> [T]he threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed space; and absence of other members of the public.

*United States v. Sanchez*, 89 F.3d 715, 718 (10th Cir. 1996). When conducting this inquiry, "no single factor is dispositive," and "'the strong presence of two or three factors' may be sufficient" to support a conclusion that a seizure occurred. *United States v. Lopez*, 443 F.3d 1280, 1284–85 (10th Cir. 2006) (quoting *Fuerschback v. Sw. Airlines Co.*, 439 F.3d 1197, 1203 (10th Cir. 2006)).

For purposes of the Fourth Amendment, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603 (1980). And when an officer arrests an individual in that individual's home, the officer is "in a confined setting of unknown configuration" and is at greater risk of an ambush as compared to more open or familiar surroundings. *Maryland v. Buie*,

8

494 U.S. 325, 333 (1990). Considering this governmental interest in securing the area surrounding an arrestee and in protecting officers, it is therefore justified to temporarily detain bystanders during an arrest. *United States v. Maddox*, 388 F.3d 1356, 1363 (10th Cir. 2004).

When temporarily detaining bystanders incident to an arrest, the Tenth Circuit distinguishes between immediately adjoining areas and locations further away from the place of arrest. If a bystander "is in an immediately adjoining area to the arrestee," officers may place the "bystander in temporary protective detention without a reasonable and articulable suspicion of danger." *Id.* (citing *Thompson v. City of Lawrence*, 58 F.3d 1511, 1517 (10th Cir. 1995)). These areas include "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Buie*, 494 U.S. at 334. An officer, however, does not have "carte blanche . . . to detain any third party, using any means, as an adjunct to a lawful arrest." *Maddox*, 388 F.3d at 1367. "[L]aw enforcement officers may only detain individuals on the scene of the arrest who are <u>not</u> within the 'immediately adjoining' area of the arrest if the officers 'possess a reasonable belief based on specific and articulable facts[,]' that the individual poses a danger to them." *Id.* at 1363 (quoting *Buie*, 494 U.S. at 337) (emphasis added). Such detentions must be "no more than necessary to protect the officer[s] from harm" and should "last[] no longer than is necessary to dispel the reasonable suspicion of danger." *Id.* at 1367 (quoting *Buie*, 494 U.S. at 333, 335–36). This may mean that it is permissible for an officer to detain "potentially dangerous persons for the duration of the arrest." *Id.* at 1362.

9

*1) The April 10, 2017 unreasonable seizure claims*

On April 10, 2017, the individual defendants attempted to execute an arrest warrant for Abel Sr.  Defendants knocked on the door to Apartment A103 and, after no one answered, entered the apartment.  Defendants then ordered anyone in the back bedroom to come out with their hands up.  Alicia Carmona (Alicia), who had been hiding in the back bedroom with four of her grandchildren, complied with the order and exited the bedroom with her hands up.  Her grandchildren followed behind her.  Defendants responded by briefly pointing their weapons at Alicia and her grandchildren.  Defendants detained Alicia right outside the door to A103 and detained the grandchildren on some stairs a few feet away.  While defendants searched Apartments A103 and A104, defendant Reddish questioned Alicia and, upon discovering she was unlawfully present in the United States, arrested her.

At some point, Berenice Resendiz (Berenice), Carlos Ramirez (Carlos), Abel Ramirez, Jr. (Abel Jr.), and Eduardo Ramirez (Eduardo) arrived on the scene.  The defendants prevented them from entering Apartments A103 and A104 and prevented Carlos and Abel Jr. from speaking with family members.  In addition, defendant Reddish temporarily handcuffed Eduardo after mistakenly thinking he was unlawfully present in the United States.

I conclude that the seizures of Alicia and her grandchildren were reasonable as a matter of law because they occurred in spaces that were immediately adjoining a place of attempted arrest.  While seizing Alicia and the children, defendant Reddish and another officer questioned Alicia about Abel Sr.'s whereabouts and Alicia's immigration status.

10

The district court concluded, and I agree, that plaintiffs presented no evidence that this questioning prolonged Alicia's detention during the search for Abel Sr. I therefore conclude that a reasonable jury could not find that defendants unreasonably seized Alicia on April 10, 2017.

Turning to the seizure of Eduardo, he was handcuffed by defendant Reddish after Reddish asked him if he had papers and Eduardo responded in the negative. Viewing the evidence in the light most favorable to plaintiffs, Reddish left Eduardo handcuffed for ten to thirty minutes after finding out Eduardo had lawful status. Nonetheless, the district court concluded, and I agree, that plaintiffs have pointed to no clearly established law that it is an unreasonable seizure to leave an individual handcuffed after an officer finds out there are no longer grounds for arrest.

Berenice's unreasonable seizure claim, related to defendants prohibiting her from entering her apartment for several minutes, fails as a matter of law because she does not identify which of the individual defendants were responsible for the seizure. *See Pahls*, 718 F.3d at 1225–26 (quoting *Tonkovich*, 159 F.3d at 532).

Finally, I conclude as a matter of law that the seizures of Carlos and Abel Jr. were justified in order for the defendants to control the scene of Eduardo's arrest. Notably, defendant Reddish was holding Eduardo in handcuffs when Carlos and Abel Jr. approached Reddish and attempted to speak with him.

For these reasons, I conclude that the district court did not err in granting summary judgment in favor of defendants on the unreasonable seizure claims arising out of the events of April 10, 2017.

11

### 2) *The April 11, 2017 seizure claims*

On April 11, 2017, the individual defendants returned to the apartment complex with the goal of arresting Abel Sr. After knocking on the door of Apartment A103 and receiving no answer, defendants entered Apartment A103 using a battering ram, pointed their weapons at Berenice, and removed her and her three children from the apartment. Defendants also knocked on the door to Apartment A104, and when Abel Jr. answered, forced him to keep the door open and ordered him to stand outside the apartment. Eduardo walked over to Apartment A103 from his apartment in a separate building, but defendants refused to allow him to enter Apartment A103. Shortly thereafter, Carlos, who had not been at home, arrived at the scene, and the defendants questioned the family members about Abel Sr.'s whereabouts.

I conclude, as an initial matter, that the district court did not err in granting summary judgment in favor of defendants with respect to the unreasonable seizure claims asserted by Abel Jr., Eduardo, and Carlos because each of those plaintiffs have failed to identify which of the defendants were responsible for seizing them.

That leaves only the unreasonable seizure claim asserted by Berenice. As to that claim, I conclude as a matter of law that her seizure was legally justified because, at the time of that seizure, Apartment A103 was an active scene of attempted arrest. I therefore conclude the district court did not err in granting summary judgment in favor of defendants as to that claim.

12

C

To state a claim under the Fourth Amendment for excessive force, plaintiffs "must show *both* that a seizure occurred and that the seizure was unreasonable." *Thomas v. Durastanti*, 607 F.3d 655, 663 (10th Cir. 2010) (quoting *Childress v. City of Arapaho*, 210 F.3d 1154, 1156 (10th Cir. 2000)) (internal quotation marks omitted). "Physical contact is not required for an excessive force claim—patently unreasonable conduct is." *Cortez*, 478 F.3d at 1131. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In other words, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

The reasonableness inquiry in an excessive force case is objective and involves a "totality of the circumstances" analysis because "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 396–97 (citing *Scott v. United States*, 436 U.S. 128, 137–39 (1978)); *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). When considering "the facts and circumstances of each particular case," courts specifically consider three factors the Supreme Court outlined in *Graham*: (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3)

13

"whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396.

### 1) The April 10, 2017 excessive force claims

Alicia alleged that the defendants used excessive force against her when, after she responded to their order to come out of the back bedroom of Apartment A103, they pointed their weapons at her and her grandchildren for approximately fifteen seconds. The district court concluded, and I agree, that the defendants did not use excessive force in this instance. As we have held, "the use of a gun does not in and of itself make an encounter an unlawful seizure." *Lundstrom v. Romero*, 616 F.3d 1108, 1121 (10th Cir. 2010). Under the totality of the circumstances presented here, I conclude that a reasonable officer in the position of the individual defendants would have perceived a potential risk of injury or danger based upon Alicia's actions, and in turn would have responded by pointing a weapon at Alicia for a short period before determining that she posed no threat.

The only other excessive force claim related to the events of April 10, 2017, pertains to defendant Reddish's treatment of Eduardo. Plaintiffs argue that Reddish "yanked Eduardo around by the chain of the cuffs roughly" before unlocking them, and "[t]he handcuffs left bruises on Eduardo's wrists that did not fade for about a month." Aplt. Br. at 13. The district court did not adduce facts regarding how Reddish unlocked the handcuffs, but the district court did conclude that even though Eduardo asserted the handcuffs were too tight and left bruises that lasted a month, this was not sufficient to state a claim of excessive force. I find no error on the part of the district court in making

14

this ruling, especially in light of our holding in *Donahue v. Wihongi* that mere bruising is not an "actual injury" if the person subjected to force did not also suffer a permanent injury. *See* 948 F.3d 1177, 1197 (10th Cir. 2020).

### 2) The April 11, 2017 excessive force claims

Plaintiffs' claims of excessive force relating to the events of April 11, 2017, center on the defendants' use of "torrents of profanity" and emotional manipulation, including in the presence of young children. Aplt. Br. at 52. The district court adduced that some defendants were "yelling and screaming at" Eduardo on April 11 as he walked from his apartment to Apartment A103. Aplt. App. vol. III at 626. Apart from this, the district court did not base its conclusions on facts it construed, but rather concluded that Plaintiffs' *assertions* about the defendants' use of harsh language did not amount to a Fourth Amendment violation.

Having already determined that Carlos, Berenice, and their three children were not seized during the events of April 11, 2017, I conclude that their claims of excessive force cannot succeed. See *Thomas*, 607 F.3d at 663 (noting that, to state an excessive force claim under the Fourth Amendment, a plaintiff must show both that a seizure occurred and that the seizure was unreasonable).

### III

Based on the foregoing statement of facts and applicable law, I would affirm the district court's grant of summary judgment in favor of defendants as to plaintiffs' *Bivens* claims for unreasonable seizures and excessive use of force.